IN THE UNITED STATES DISTRICT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBIN BABOVEC, As Special Administratrix
of the Estate of Casey Babovec, Deceased                     PLAINTIFF

vs.                              NO. 4:13CV0699KGB

DEPUTY AND OFFICERS MIKE RICHARDS
TONYA PARKER, CALVIN REED, SAM
GRIFFIN, DION MCGUIRE, RYAN MCKINLEY,
DAVID FENTON, JAMES PAYNE, NANCY
SHELLNUT, BRUCE PENNINGTON,
JOHN and JANE DOES
I-V, COUNTY OF SALINE                                   DEFENDANTS

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE
## TO MOTION FOR SUMMARY JUDGMENT

Comes now the plaintiff, Robin Babovec, as Special Administratrix of the Estate of Casey Babovec, deceased, by and through her attorneys, James F. Swindoll and the Law Offices of James F. Swindoll, and for her brief in support of response to motion for summary judgment, states:

## FACTS

On April 13, 2011, Casey Babovec was arrested and booked into the Saline County Detention Center as a pre-trial detainee. At the time of his arrest, he was high on Methamphetamine. His erratic movements and actions caused the arresting officer to believe Casey was high. While in custody Casey requested emergency medical care, claiming he felt as

though he was having a heart attack and telling the Detention Center deputies he had ingested Methamphetamine.   The deputies, with knowledge of Casey's emergency medical need, denied Casey the necessary medical care.  Casey became involved in a fight in the holding cell and was forcibly removed from the cell by deputies.

When the deputies removed Casey from the cell, he was forced onto his chest, where deputies held him face down, applied tasers to him, used their bodies to push his body into the ground and remained on him until he suffocated.   Casey bodily fluids were released onto the floor prior to deputies getting off of him.  At this point deputies again denied Casey necessary medical care.  Casey was instead dragged into a private holding cell where he remained without care for several minutes before any emergency medical care was provided, which was provided in a manner that was not correct.

It is noted in the autopsy report that one of the contributing factors of Casey Babovec's death is "exertion", which is the Deputies use of excessive force against him after first denying him the necessary medical care to treat his Methamphetamine intoxication.  Casey Babovec died as a result of three separate failures on the part of the defendants, denying him emergency medical care for the treatment of his Methamphetamine

intoxication, the use of excessive force and denying him emergency medical care of the treatment of his injuries as a result of their use of excessive force.

## **ARGUMENT**

I. **Summary judgment is not proper as there are genuine issues of material facts as to the cause of action alleged by the plaintiff.**

Summary judgment is proper where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986). The Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1987). Summary judgment is only to be granted where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986).

II. **Qualified Immunity does not apply to the defendants because the conduct of the Defendants violated the Plaintiff's 14th Amendment Due Process Rights and these rights were clearly established at the time of the deprivation.**

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) held that qualified immunity for a state actor is designed to shield the actor from actions "insofar as their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known."  In *Pearson v. Callahan*, 555 U.S. 223 (2009) the Supreme Court further clarified the test for qualified immunity by allowing a court to first consider whether federal law forbidding an action was clearly established at the time of that action, and then consider whether the action violated clearly established law.  "If the law is clearly established, the qualified immunity defense will fail unless the official claims extraordinary circumstances and can prove that he neither knew, or should have known, of the relevant legal standard."  *Johnson-El v. Schoemel,* 878 F.2d 1043, 1048 (8th Cir. 1989) quoting *Harlow v. Fitzgerald* at 818-819.

In 1989 the 8th Circuit held the use of force on a pre-trial detainee is excessive when it is not reasonably necessary to maintain discipline. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989). Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to legitimate purpose or those that are rationally related but are excessive in light of their purpose. *Johnson-El*, 878 F.2d at 1048.  "[W]hen supervisory liability is imposed, it is imposed

against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987).

The 8th Circuit has recognized since at least *Boswell v. Sherburne Cnty.*, 849 F.2d 1117, 1121 (8th Cir. 1988), "a pretrial detainee's right to emergency medical care has [been] both clearly established and clearly contoured before 1984," beginning truly with *Estelle v. Gamble*, "which proscribed prison officials from exhibiting 'deliberate indifference to [the] serious medical needs of prisoners,' 429 U.S. at 104, 97 S.Ct. at 291 which was decided in 1967."

Witness Christy Nichols has testified that Casey was told if he didn't quit requesting medical care he would be tased.  Exhibit "4"; *Nichols sworn statement,* Exhibit "2" *Lyman report.*  Casey was later tased when he was forcibly removed from the holding cell.  This is evidence enough to submit to a jury about the question of whether the defendants used a taser as punishment when Casey continued to request medical care.

A pre-trial detainee's right to be free from the use of excessive force as punishment and the proscription against prison officials from using deliberate indifference to his medical needs had been clearly established

prior to April of 2011, the defendants are not entitled to qualified immunity for their actions.

The following facts before the Court demonstrate that the defendants are not entitled to qualified immunity:

a.   The Saline County Detention Center ("Detention Center") and its Deputies were aware of the intoxication of Casey Babovec at his arrival at 1pm, Exhibit "2" *Lyman's affidavit & report*, citing jail records and intake records and analysis;

b.   The Detention Center and its officers and their supervisors should not have placed Casey into the facility and in detention under the circumstances see Exhibit "2", *Lyman report*, and Exhibit "3", d*eposition of Sheriff Pennington vol. 2, p. 12 - 17*;

c.   That on April 13, 2011, the Detention Center had no physician or medical healthcare professional, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 15 - 19;*

d.   That the Detention Center had been built to include medical health facilities but the County of Saline had refused to provide a medical care professional in the jail since 2008, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 17*, Exhibit "8", *Saline County Quorum Court minutes, October 2008*;

e.   That County of Saline and Sheriff Pennington were aware that there were no medical personnel at the Detention Center and knowingly allowed this deficiency to exist Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.16 - 17*;

f.   That County of Saline, Sheriff Pennington and the supervisors in the Detention Center were aware that there were multiple complaints about medical care and many civil rights suits alleging constitutional violations regarding medical care in the Detention Center, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 17*;

g.   That the Detention Center personnel were NOT competent and NOT sufficiently trained to make an assessment that circumstances require be done, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 15 - 18*;

h.   That the jailer who booked and placed Casey in the Detention Center failed to evaluate and take appropriate precaution with Casey, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.* 12 - 18;

i.   That the Saline County Quorum Court had denied the Detention Center's request for medical personnel and was aware since 2008 that the facility was not staffed with medical personnel, Exhibit "8", *Saline County Quorum Court minutes October 2008*, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.* 15 - 19;

j.   That during the afternoon Casey while in custody and under video watch, he demonstrated many objective symptoms of Methamphetamine intoxication and repeatedly asked for emergency medical care indicating that he was having a heart attack and needed emergency medical care and was ignored and even threatened with a taser if he continued to ask, Exhibit "4", *sworn statement of Christi Nichols*;

k.   That during the afternoon while in custody of Detention Center and with the jailers and their supervisors watching, Casey lost control of his bowels and was allowed to change into orange inmate pants by Deputy Dion McGuire, Exhibit "4", *sworn statement of Christi Nichols*

l.   That the jailers and their supervisors were aware of why Casey had lost control of his bowels requiring a change of his pants. Dion McGuire was the deputy who took Casey to change his pants and returned him to a bench outside the holding cell before placing Casey back into the cell. *Defendants undisputed fact #3*

m.   That Casey sat on a bench outside the holding cell with Christi Nichols, an inmate at the jail, and discussed his intoxication

with her and she informed the defendants.  Exhibit "4", *sworn statement of Christi Nichols*, Exhibit "7", *Detention Center video*;

n.    That Dion McGuire was aware of the dangers of acute Methamphetamine intoxication and the Methamphetamine intoxication of Casey but instead of seeking help for Casey, McGuire intentionally teased and taunted him.  Exhibit "4", *sworn statement of Christ Nichols*;

o.    That Dion McGuire was a supervisor at the Detention Center with the awareness of Methamphetamine intoxication and did not report or take action to protect or render medical assistance to Casey violating Detention Center policy, Exhibit "4", *sworn statement of Christi Nichols*, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 19*;

p.    That the jailers were not competent and did not have the necessary training to administer practices at the Detention Center requiring that Dion McGuire, supervisors and all jailers act to assess an inmate in the circumstance (they are required by jail practices to take action to assess and take action if necessary, to protect the detainee) Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.* 14 - 17;

q.    That for hours after his incarceration, the jailers monitoring Casey were aware of this event secondary to acute intoxication and ignored the intoxication and taunted and teased Casey. Instead of assessing and taking action in violation of Detention Center policy Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.*12 - 17, Exhibit "4", *sworn statement of Christi Nichols*;

r.    That Casey was not resisting, Exhibit "4" *sworn statement of Christi Nichols*, Exhibit "5", *sworn statement of Carolyn Voiles* and Exhibit "7", *Detention Center video*(minute 1/23);

s.    That during removal from the holding cell, Casey was telling the Deputies that he was not resisting orders, Exhibit "4" *sworn statement of Christi Nichols*, Exhibit "5", *sworn statement of Caroline Voiles*;

t.    That during Casey's take down, Deputies and supervisors, Richards and McGuire, were aware that Casey was telling them that he was not resisting but that he could not move his arm Exhibit "4", *sworn statement of Christy Nichols*, and Exhibit "5", *sworn statement of Carolyn Voiles*;

u.    During Casey's removal each of the defendant jailers and supervisors failed to use reasonable force under the circumstances that was necessary to meet any real threat and failed to intervene and stop the improper restraint, Exhibit "2", *Lyman report/affidavit*;

v.    That during removal Tasers were used as a punishment for asking for medical help, Exhibit "4", *sworn statement of Christ Nichols*, Exhibit "2", *Lyman report*;

w.    That during the removal and after his restraint Casey complained loudly and many times that he was not resisting, that he could not breath before he went unconscious, Exhibit "4", *sworn statement of Christy Nichols*, and Exhibit "5", *sworn statement of Carolyn Voiles*;

x.    That after Casey was rendered unconscious after complaining he could not breath, the deputies and their supervisors made no attempt by render any aid to the detainee that had been rendered unconscious in this manner, Exhibit "4", *sworn statement of Christy Nichols*, Exhibit "5", *sworn statement of Carolyn Voiles* and Exhibit "7", *Detention Center video*;

y.    That Casey was dragged into a another cell, laid face down and ignored in violation of his rights to such care and in violation of Detention Center policy Exhibit "3", *deposition of Sheriff Pennington vol. 2,* p. 16 - 18, Exhibit "7", *Detention Center video*;

z.    That emergency medical procedures performed by the jailers were delayed in violation of jail policy Exhibit "7", *Detention Center video* and Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 19*;

aa.    Methamphetamine intoxication is not the sole cause of death, Exhibit "1", *affidavit of Dr. Charles Kokes*;

bb.    That the cause of death resulted from physical forces applied by the Deputies, the loss of breathing air and caused exertion and overload of his cardiovascular system that was a "cause of the death" of Casey, Exhibit "1", *Affidavit of Dr. Charles Kokes*;

cc.    That asphyxiation was also cause of the death brought by the deputies compressing his pulmonary system while they were on top of him, Exhibit "1", *Affidavit of Dr. Charles Kokes*;

dd.    That Methamphetamine intoxication would not have killed Casey, Exhibit "1", *Affidavit of Dr. Charles Kokes*;

## III. Defendants were deliberately indifferent to the serious medical needs of Casey Babovec when he exhibited signs of drug intoxication, requested medical care, and was denied medical care.

"Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011). An official may be held liable if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 916. "The factual determination that an official had the requisite knowledge of a substantial

risk may be inferred from circumstantial evidence, or from fact that risk was obvious." *Id.*

"A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id. at* 905, 914. If a medical need would be obvious to a lay person, verifying medical evidence is unnecessary. *Id.* at 914.

Upon his arrival at the Saline County Detention Center, Casey Babovec was showing signs of Methamphetamine intoxication. The Deputies were aware of his intoxication upon his arrival but accepted and booked him into the facility anyway. See *Fact "a"*. The supervisors and the Deputies should not have accepted Casey Babovec into the Detention Center under the circumstances. *See Fact "b"*. That the deputies and jail personnel were not competent and not sufficiently trained by their supervisors to make an assessment of Casey Babovec's medical condition that circumstances required. *See Fact "g"*. The deputy who booked and placed Casey Babovec into the Detention Center failed to evaluate and take appropriate precautions with Casey Babovec based on the fact he was showing signs of Methamphetamine intoxication. *See Fact "h"*.

Casey Babovec showed objective signs during the afternoon he was detained at the Detention Center, which were recorded on video and observed by supervisors, of Methamphetamine intoxication and requested emergency medical care.  *See Fact "j".*  His repeated requests were met with denials and threats of force through the use of a taser if he continued to ask for care, *see Fact "j".*  During the afternoon he was in custody deputies, including Dion McGuire observed Casey Babovec increase in agitation and eventually lose control of his bowels.  *See Fact "k".*  Dion McGuire assisted Casey Babovec in cleaning up after the loss of his bowels and then placed Casey on a bench outside of the holding cell near Christy Nichols.  *See Fact l.*  Casey Babovec told Christy Nichols and the defendants that he had ingested Methamphetamine and needed medical care.  *See Fact "m".*  Dion McGuire, a supervisor at the Detention Center, was aware of the dangers of acute Methamphetamine intoxication, but instead of seeking help for Casey Babovec, he taunted Casey.  *See Facts "n" and "o".*

There was no physician or other medical professional at the Detention Center, due to the failure of Saline County to provide such, to treat to diagnose Casey Babovec as having Methamphetamine intoxication.  *See Fact "c".*  The Detention Center had been built to include health

facilities, but Saline County had refused to provide medical care at the Detention Center since 2008. *See Fact "d".*  County of Saline and Sheriff Pennington were aware that no medical personnel were are the facility and that this would endanger detainees, and knowingly allowed this deficiency to exist and denied requests for medical personnel. *See Facts "e" and "l".* The County of Saline and Sheriff Pennington set the custom, pattern, and practice regarding medical care for the facility and were aware that there were multiple complaints regarding lack of medical care and civil rights suits against the facility prior to April 13, 2011.  See *Fact "f".*  The Deputies were not competent and did not have the necessary training to administer the practices of the Detention Center which required Dion McGuire, the other supervisors and all deputies to protect an inmate who was showing objective signs of needing medical care. *See Fact "p".*  For hours after his incarceration, the deputies monitoring Casey Babovec were aware of his Methamphetamine intoxication, but rather than summon medical care they taunted, teased him, and threated him with force if he continued to request medical care. *See Fact "q".*

**IV.    The force used against the plaintiff was excessive, punitive, and amounted to a violation of his Fourteenth Amendment due process rights.**

Pre-trial detainees, as opposed to convicted prisoners, are individuals who have been charged with a crime but have not been tried and convicted of the charge. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). The Supreme Court held in *Bell v. Wolfish*, that the due process cause of the Fourteenth Amendment applies to pretrial detainees, and a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unlike convicted criminals, the state has no right to punish pretrial detainees. *Bell* at 535. Force may be used to further legitimate security interests of the jail, but the use of force on a pretrial detainee is excessive when it is not reasonably necessary to maintain discipline. *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment. *Morris v. Zefferi*, 601 F.3d 805 809 (8th Cir. 2010). Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to legitimate purpose or those that are rationally related but are excessive in light of their purpose. *Johnson-El*, 878 F.2d at 1048. The use of force must be objectively reasonable in light of the situation presented. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir.

2001).  When making this determination, the court must consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) whether it was used for punishment rather than for a legitimate purpose such as maintaining order or security within the facility; and (5) whether a reasonable officer on the scene would have used force under similar circumstances.  *Andrews* 253 F.3d at 1061 n.7.

When Casey Babovec was pulled from the holding cell on April 13, 2011, he was not resisting the efforts of the Deputies, he was fighting for his life as the Deputies were pushing him down onto his chest where he could not breath.  *See Fact "r".*  During his removal and take down Casey was yelling "I am not resisting" but the Deputies continued to use force against him face down.  *See Fact "s.*  During his removal, the Deputies and Supervisors were aware that Casey Babovec was telling them he was not resisting and aware he was face down with pressure on his chest after having complained of chest pain, but failed to stop their actions.  *See Fact "t".*  Each of the supervisors and deputies had a duty to prevent the others from using excessive force, but did not.  *See Fact "u".*

Tasers were used as force during the take down, as had been threated if Casey Babovec continued to request medical care for his chest

pains.  *See Fact "v".*   Casey Babovec complained loudly during the Deputies take down that he was not resisting and could not breath, until the point when he went unconscious and released his bowels.  *See Fact "w".* After Casey was rendered unconscious after having complained that he 1) was having chest pains and 2) could not breath, no attempt was made by any supervisor or deputy to summon medical care for several minutes. *See Fact "x".*

Dr. Kokes of the Arkansas Crime Lab has stated that Casey Babovec's death resulted from the physical forces applied by the Deputies, the loss of breathing air, and caused exertion and that an overload of his cardiovascular system was the "cause of death."  *See Fact "bb".*  Positional asphyxiation, being held fact down on his chest with pressure on his back brought on by the Deputies compressing his pulmonary system while they were on top of him, was also a cause of death.  *See Fact "cc".*  Lastly, Methamphetamine intoxication alone would not have killed Casey Babovec. *See Fact "dd".*

**V.    Defendants were deliberately indifferent to the serious medical needs of Casey Babovec when they did not immediately summon medical care for him when he was unconscious following their use of force on him.**

"Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914-15 (8th Cir. 2011). An official may be held liable if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 916. "The factual determination that an official had the requisite knowledge of a substantial risk may be inferred from circumstantial evidence, or from fact that risk was obvious." *Id.*

"A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.at* 905, 914. If a medical need would be obvious to a lay person, verifying medical evidence is unnecessary. *Id.* at 914.

After Casey was rendered unconscious after having complained that he 1) was having chest pains and 2) could not breath, no attempt was made by any supervisor or deputy to summon medical care for several minutes. *See Fact "x"*. Casey Babovec was then dragged unconscious into another cell, laid face down, and ignored in violation of his rights to

medical care and in violation of the Detention Center's policy. *See Fact "y".* Emergency medical care procedure were performed minutes later, but were delayed in violation of policy. *See Fact "z".* Ultimately, Casey Babovec died on April 13, 2011.

Dr. Kokes of the Arkansas Crime Lab has stated that Methamphetamine intoxication is not the sole cause of death and cannot by itself be said to be the cause of death. *See Fact "aa".* Casey Babovec's death resulted from the physical forces applied by the Deputies, the loss of breathing air, and caused exertion and that an overload of his cardiovascular system was the "cause of death." *See Fact "bb".* Positional asphyxiation, being held fact down on his chest with pressure on his back brought on by the deputies compressing his pulmonary system while they were on top of him, was also a cause of death. *See Fact "cc".* Lastly, Methamphetamine intoxication alone would not have killed Casey Babovec. *See Fact "dd".*

## VI. The County of Saline is liable for the pattern and practices of denying medical care to detainees and use of excessive force against detainees.

It is well established law that a municipality is only liable for the deprivation of federal rights caused by its own policy, pattern, or practice. *Monett v. New York City Department of Social Services*, 436 U.S. 658, 690-

692 (1978).   A municipality is liable for the damages which flow from constitutional violations that it has caused through the executions of its policy or custom.  *Owen v. City of Independence*, 445 U.S. 622 (1980).

The County of Saline is responsible for the use of excessive force and the denial of necessary medical care by deputies through their de facto condoning the practice of using excessive force by not changing the pattern or practice of using excessive force to detainees after becoming aware of the situation through complaints and lawsuits.  Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 15 - 19.*

The County of Saline is responsible for the use of excessive for and the denial of necessary medical care by deputies through their failure to train personnel on the difference between the rights of pre-trial and post-trial detainees.  Exhibit "6" *deposition of Mike Richards.*  The County of Saline is responsible for the improper use of force visa via a taser by unauthorized personnel on Casey Babovec.  Exhibit "3", *deposition of Sheriff Pennington.*

The County of Saline is responsible for the denial of necessary medical care by deputies through their failure of provide training to deputies as to how to recognize when a detainee needs medical care or to place medical staff in the detention center, even after Sheriff Pennington put the

County on notice of the need for such care.   Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 15 - 19,* Exhibit "8", *Saline County Quorum Court minutes, October 2008*.   Sheriff Pennington, as the Sheriff, was responsible for the custom and practices of the Detention Center, was responsible for implementing the patterns and practices of the Detention Center which the Deputies were to use to protect the detainees in the care of the Detention Center.

**VII.  Punitive damages are proper in this case as individual defendants' conduct exceeds the threshold of "reckless indifference" to Casey Babovec's federally protected rights.**

Punitive damages may be awarded "when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent."   See *Schaub v. VonWald*, 638 F.3d 905, 922-24 (8th Cir. 2011).   The threshold inquiry for award of punitive damages is whether the evidence supports that the conduct involved was reckless or callous indifference.   See *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535, 536 (1999).

Christy Nichols heard Dion McGuire taunt Casey Babovec in reckless disregard for the health and safety of Casey's life.   Exhibit "4", *sworn statement of Christy Nichols p. 6 - 11,* Exhibit "2"*, Lyman report p. 9 - 11.*

The threats and taunts show a reckless disregard for Casey Babovec's health and safety, knowledge of Casey's obvious medical need and a deliberate indifference to his need for medical treatment.   Expert Dr. Michael Lyman's report details how each individual defendant acted in reckless disregard for the federally protected constitutional rights of Casey Babovec, and contributed to his death.

## **CONCLUSION**

Because there are genuine issues of material fact upon which a jury could find for the plaintiff, the defendant's motion for summary judgment should be denied.

Respectfully submitted,

/s/ **James F. Swindoll**
Bar Number 77131
Attorney for Plaintiff
Law Offices of James F. Swindoll
212 Center Street, Suite 300
Little Rock, Arkansas  72201
(501) 374-1290
E-mail: jswindoll@swindolllaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. George D. Ellis
**Ellis Law Firm**
Attorneys at Law
Post Office Box 2307
Benton, Arkansas  72018-2307

/s/ **James F. Swindoll**
Bar Number 77131
Attorney for Plaintiff
Law Offices of James F. Swindoll
212 Center Street, Suite 300
Little Rock, Arkansas  72201
(501) 374-1290
E-mail: jswindoll@swindolllaw.com