IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBIN BABOVEC, As Special Administratrix
of the Estate of Casey Babovec, Deceased          PLAINTIFF

vs.                    NO. 4:13CV0699KGB

DEPUTY AND OFFICERS MIKE RICHARDS
TONYA PARKER, CALVIN REED, SAM
GRIFFIN, DION MCGUIRE, RYAN MCKINLEY,
DAVID FENTON, JAMES PAYNE, NANCY
SHELLNUT, BRUCE PENNINGTON,
JOHN and JANE DOES I-V, COUNTY OF SALINE          DEFENDANTS

## PLAINTIFF'S STATEMENT OF FACTS STILL IN DISPUTE

Pursuant to the requirements of Local Rule 56.1 (a), plaintiff hereby submits the following as facts still in dispute:

1. Whether or not the Saline County Detention Center ("Detention Center") and its Deputies were aware of the intoxication of Casey Babovec at his arrival at 1pm, Exhibit "2" *Lyman's affidavit & report, citing jail records and intake records and analysis;*

2. Whether or not the Detention Center and its officers and their supervisors should have placed Casey into the facility and in detention under the circumstances see Exhibit "2", *Lyman report*, Exhibit "3", d*eposition of Sheriff Pennington vol. 2, p. 12 - 17*;

1

3.     Whether or not on April 13, 2011, the Detention Center had a physician or medical healthcare professional, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 15 - 19*;

4.     Whether or not the Detention Center had been built to include medical health facilities but the County of Saline had refused to provide a medical care professional in the jail since 2008, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 17*, Exhibit "8", *Saline County Quorum Court minutes, October 2008;*

5.     Whether or not the County of Saline and Sheriff Pennington were aware that there were no medical personnel at the Detention Center and knowingly allowed this deficiency to exist, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.16 - 17*;

6.     Whether or not the County of Saline, Sheriff Pennington and the supervisors in the Detention Center were aware that there were multiple complaints about medical care and many civil rights suits alleging constitutional violations regarding medical care in the Detention Center, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 17*;

7.     Whether or not the Detention Center personnel were competent and sufficiently trained to make an assessment that circumstances require be done, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 15 - 18*;

8. Whether or not the jailer who booked and placed Casey in the Detention Center failed to evaluate and take appropriate precaution with Casey, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.* 12 - 18;

9. Whether or not the Saline County Quorum Court had denied the Detention Center's request for medical personnel and was aware since 2008 that the facility was not staffed with medical personnel, Exhibit "8", *Saline County Quorum Court minutes October 2008*, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.* 15 - 19;

10. Whether or not during the afternoon Casey while in custody and under video watch, he demonstrated many objective symptoms of Methamphetamine intoxication and repeatedly asked for emergency medical care indicating that he was having a heart attack and needed emergency medical care and was ignored and even threatened with a taser if he continued to ask, Exhibit "4", *sworn statement of Christi Nichols*;

11. Whether or not during the afternoon while in custody of Detention Center and with the jailers and their supervisors watching, Casey lost control of his bowels and was allowed to change into orange inmate pants by Deputy Dion McGuire, Exhibit "4", *sworn statement of Christi Nichols;*

12. Whether or not the jailers and their supervisors were aware of why Casey had lost control of his bowels requiring a change of his pants. Dion McGuire was the deputy who took Casey to change his pants and returned him to a bench outside the holding cell before placing Casey back into the cell. *Defendants' undisputed fact #3;*

13. Whether or not Casey sat on a bench outside the holding cell with Christi Nichols, an inmate at the jail, and discussed his intoxication with her and she informed the defendants. Exhibit "4", *sworn statement of Christi Nichols*, Exhibit "7", *Detention Center video*;

14. Whether or not Dion McGuire was aware of the dangers of acute Methamphetamine intoxication and the Methamphetamine intoxication of Casey but instead of seeking help for Casey, McGuire intentionally teased and taunted him. Exhibit "4", *sworn statement of Christ Nichols*;

15. Whether or not Dion McGuire was a supervisor at the Detention Center with the awareness of Methamphetamine intoxication and did not report or take action to protect or render medical assistance to Casey violating Detention Center policy, Exhibit "4", *sworn statement of Christi Nichols*, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p. 12 - 19*;

16. Whether or not the jailers were not competent and did not have the necessary training to administer practices at the Detention Center requiring that Dion McGuire, supervisors and all jailers act to assess an inmate in the circumstance (they are required by jail practices to take action to assess and take action if necessary, to protect the detainee) Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.* 14 - 17;

17. Whether or not for hours after his incarceration, the jailers monitoring Casey were aware of this event secondary to acute intoxication and ignored the intoxication and taunted and teased Casey. Instead of assessing and taking action in violation of Detention Center policy, Exhibit "3", *deposition of Sheriff Pennington vol. 2, p.*12 - 17, Exhibit "4", *sworn statement of Christi Nichols*;

18. Whether or not Casey was resisting, Exhibit "4" *sworn statement of Christi Nichols*, Exhibit "5", *sworn statement of Carolyn Voiles*, Exhibit "7", *Detention Center video*(minute 1/23);

19. Whether or not during removal from the holding cell, Casey was telling the Deputies he was not resisting orders, Exhibit "4" *sworn statement of Christi Nichols*, Exhibit "5", *sworn statement of Caroline Voiles*;

20. Whether or not during Casey's take down, Deputies and supervisors, Richards and McGuire, were aware that Casey was telling

5

them that he was not resisting but that he could not move his arm, Exhibit "4", *sworn statement of Christy Nichols*, and Exhibit "5", *sworn statement of Carolyn Voiles*;

21. Whether or not during Casey's removal each of the defendant jailers and supervisors failed to use reasonable force under the circumstances that was necessary to meet any real threat and failed to intervene and stop the improper restraint, Exhibit "2", *Lyman report/affidavit*;

22. Whether or not during removal Tasers were used as a punishment for asking for medical help, Exhibit "4", *sworn statement of Christ Nichols*, Exhibit "2", *Lyman report*;

23. Whether or not during the removal and after his restraint Casey complained loudly and many times that he was not resisting, that he could not breath before he went unconscious, Exhibit "4", *sworn statement of Christy Nichols*, Exhibit "5", *sworn statement of Carolyn Voiles*;

24. Whether or not after Casey was rendered unconscious after complaining he could not breath, the deputies and their supervisors made no attempt by render any aid to the detainee that had been rendered unconscious in this manner, Exhibit "4", *sworn statement of Christy Nichols*,

Exhibit "5", *sworn statement of Carolyn Voiles,* Exhibit "7", *Detention Center video*;

27. Whether or not Casey was dragged into a another cell, laid face down and ignored in violation of his rights to such care and in violation of Detention Center policy, Exhibit "3", *deposition of Sheriff Pennington vol. 2,* p. 16 - 18, Exhibit "7", *Detention Center video*;

26. Whether or not emergency medical procedures performed by the jailers were delayed in violation of jail policy, Exhibit "7", *Detention Center video,* Exhibit "3", *deposition of Sheriff Pennington vol. 2,* p. 12 - 19;

27. Whether or not Methamphetamine intoxication is the sole cause of death, Exhibit "1", *affidavit of Dr. Charles Kokes*;

28. Whether or not the cause of death resulted from physical forces applied by the Deputies, the loss of breathing air and caused exertion and overload of his cardiovascular system that was a "cause of the death" of Casey, Exhibit "1", a*ffidavit of Dr. Charles Kokes*;

29. Whether or not asphyxiation was also a cause of the death brought by the deputies compressing his pulmonary system while they were on top of him, Exhibit "1", a*ffidavit of Dr. Charles Kokes*;

30. Whether or not Methamphetamine intoxication would have killed Casey, Exhibit "1", a*ffidavit of Dr. Charles Kokes*;

7

Respectfully submitted,

/s/ **James F. Swindoll**
Bar Number 77131
Attorney for Plaintiff
Law Offices of James F. Swindoll
212 Center Street, Suite 300
Little Rock, Arkansas  72201
(501) 374-1290
E-mail: jswindoll@swindolllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Mr. George D. Ellis
**Ellis Law Firm**
Attorneys at Law
Post Office Box 2307
Benton, Arkansas  72018-2307

/s/ **James F. Swindoll**
Bar Number 77131
Attorney for Plaintiff
Law Offices of James F. Swindoll
212 Center Street, Suite 300
Little Rock, Arkansas  72201
(501) 374-1290
E-mail: jswindoll@swindolllaw.com