IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ROBIN BABOVEC, As Special Administratrix
Of The Estate Of Casey Babovec, Deceased                               PLAINTIFF

v.                          Case No. 4:13-cv-00699-KGB

DEPUTY AND OFFICERS MIKE RICHARDS,
TONYA PARKER, CALVIN REED, SAM
GRIFFIN, DION McGUIRE, RYAN McKINLEY,
DAVID FENTON, JAMES PAYNE, NANCY
SHELNUTT, BRUCE PENNINGTON, JOHN
and JANE DOES I-V, COUNTY OF SALINE                                    DEFENDANTS

## OPINION AND ORDER

Plaintiff Robin Babovec, as special administratrix of the estate of Casey Babovec, brings this action against defendants pursuant to 42 U.S.C. §1983, the Fourteenth Amendment to the United States Constitution, and Arkansas Code Annotated § 16-62-102, which governs wrongful deaths in Arkansas (Dkt. No. 2). Before the Court is defendants' motion for summary judgment (Dkt. No. 20). For the reasons that follow, the Court grants in part and denies in part defendants' motion. The Court grants summary judgment in favor of defendants on Ms. Babovec's unconstitutional use of force claim against defendant Bruce Pennington in his individual capacity, and that claim is dismissed with prejudice.

I.   Factual Background

Unless otherwise noted and specified by citation, the following facts are undisputed and taken from defendants' statement of undisputed facts (Dkt. No. 22) and Ms. Babovec's statement of facts still in dispute (Dkt. No. 29) and brief in support of her response (Dkt. No. 28). Defendants have filed a motion requesting that their undisputed facts be deemed admitted

pursuant to Local Rule 56.1 (Dkt. No. 30).  The Court grants in part that motion and deems admitted only those facts not controverted by Ms. Babovec's statement of facts still in dispute.

On April 13, 2011, Mr. Babovec was arrested on an outstanding warrant and transported to the Saline County Detention Center.  At some point at the time of arrest, Mr. Babovec consumed two plastic packets of methamphetamine, which defendants contend he did to avoid being caught in possession of a controlled substance.

According to Ms. Babovec, Mr. Babovec at some point began exhibiting objective signs of methamphetamine intoxication (Dkt. No. 29, at 3).  Based on the record evidence before the Court, the parties do not appear to dispute that Mr. Babovec appeared under the influence and "high" (Dkt. Nos. 22-4, at 10-12; 27-2, at 5-7).  The parties do not appear to dispute that Mr. Babovec could not be still and was speaking rapidly (Dkt. No. 22-4, at 10-12, 32-33).

The parties agree that, at some point, Mr. Babovec lost control of his bowels and was allowed to change into clean pants (Dkt. Nos. 22, at 1; 28, at 2), though defendants contend that Mr. Babovec showed no signs of distress, unsteadiness on his feet, slurred speech, labored breathing, or unpleasant disposition (Dkt. No. 22, at 3).  It is unclear to the Court on this record whether Mr. Babovec lost control of his bowels one, two, or three times during the course of the events at issue.  There is some record evidence that Mr. Babovec claimed to have lost control of his bowels in the patrol car after his arrest before arriving at the Saline County Detention Center (Dkt. No. 27-2, at 5); that he lost control of his bowels before or while being held in holding cell #1 at the Saline County Detention Center, which housed 10 to 12 detainees to await booking (Dkt. No. 27-4, at 6-8); and that he lost control of his bowels during or after the altercation with Saline County Detention Center staff outside of holding cell #1 (Dkt. Nos. 22-4, at 44; 27-5, at 12).  These facts appear to be in dispute.

2

Ms. Babovec alleges that, while being detained as a pre-trial detainee at the Saline County Detention Center, Mr. Babovec requested emergency medical care, claimed that he felt as though he was having a heart attack, and notified the Saline County Detention Center staff that he had ingested methamphetamine (Dkt. No. 28, at 1-2).  From the record evidence, it appears that Mr. Babovec was detained for approximately four or five hours in the Saline County Detention Center after being arrested (Dkt. No. 27-2, at 6-7).  Ms. Babovec claims that Saline County Detention Center staff were notified of Mr. Babovec's intoxication by another inmate with whom Mr. Babovec had discussed it (Dkt. No. 27-4, at 9), but that Saline County Detention Center staff including but not limited to Mr. McGuire "intentionally teased and taunted him" instead of getting him medical care (Dkt. No. 29, at 4).  There is record evidence presented by Ms. Babovec that Saline County Detention Center staff informed Mr. Babovec that, if he beat on the door again in an effort to request assistance or medical assistance, the staff would tase him (Dkt. No. 27-4, at 9-10).  Defendants deny these allegations.  While these facts are in dispute, there is no record evidence that prior to Mr. Babovec being taken into the smaller, private holding cell #5 medical assistance was rendered to him or called for him.

Based on the record evidence, after having defecated on himself and being escorted by Saline County Detention Center staff to shower and change pants, Mr. Babovec was placed again into holding cell #1.  He started a fight in holding cell #1, after which Saline County Detention Center staff forcibly removed him from the cell.  Defendants claim that Saline County Detention Center staff broke up the fight for Mr. Babovec's own safety and that Mr. Babovec resisted the staff's attempts to handcuff him, which caused other staff to wrestle Mr. Babovec to the floor (Dkt. No. 22, at 2).  Mr. Babovec does not appear to dispute that, during the altercation with Saline County Detention Center staff, Mr. Babovec bit defendant Dion McGuire and defendant

3

Nancy Shelnutt sustained an injury (*Id.*).  Ms. Babovec contends that Mr. Babovec was forced onto his chest, where Saline County Detention Center staff held him face down and pushed his body into the ground—during which Mr. Babovec complained that he was not resisting, that he was having chest pains, and that he could not breathe—until he eventually passed out and released his bowels (Dkt. No. 28, at 2).  The parties agree that Mr. Babovec was tased at least twice, which again Ms. Babovec states defendants threatened to do if he continued to request medical care (Dkt. Nos. 28, at 2; 29, at 3).  The parties also appear to agree that at some point Mr. Babovec vomited.

After the altercation with Saline County Detention Center staff outside of holding cell #1, there are genuine issues of material fact in dispute.  Mr. Babovec may have spit up blood and saliva during or after the altercation (Dkt. Nos. 22-4, at 34; 22-5, at 14).  Mr. Babovec may have urinated and lost control of his bowels during or after the altercation (Dkt. Nos. 22-4, at 44; 22-5, at 13; 27-5, at 12).  Mr. Babovec may have been sweating profusely (Dkt. No. 22-5, at 28).  Mr. Babovec may have been moved into a sitting position by Saline County Detention Center staff (Dkt. Nos. 22-4, at 33-34; 22-5, at 14).  Mr. Babovec may have been conscious or might not have regained consciousness after the altercation.  Various factual scenarios are supported by the record evidence before the Court.

At some point, Saline County Detention Center staff placed Mr. Babovec in holding cell #5, where he remained for several minutes.  He may have been placed in that cell face down, with his hands still cuffed behind his back, so that he continued to rest with his body weight on his chest (Dkt. Nos. 22-5, at 14-15; 22-9, at 3).  This may be where he threw up, or he may have thrown up for a second time (Dkt. No. 22-5, at 15).  He may have been rolled onto his side (*Id.*).  He may have been making sounds and moving at some point (Dkt. No. 22-5, at 15-16), or he

4

may not have been conscious at all after being moved into that holding cell (Dkt. Nos. 22-9, at 2; 27-4 at 11-12).

At some point, defendant Tonya Parker realized that Mr. Babovec was not breathing. Ms. Parker and defendant Calvin Reed, with the help from others, administered CPR and hooked Mr. Babovec up to a defibrillator until first responders and paramedics arrived. Ms. Babovec states that, although the detention center had been built to include medical health facilities, the County had not provided a medical care professional at the facility since 2008 (Dkt. No. 29, at 2). Despite Saline County Detention Center staff's efforts, which Ms. Babovec claims were administered belatedly and incorrectly, Mr. Babovec passed away (Dkt. Nos. 28, at 2; 29, at 7).

The autopsy of Mr. Babovec revealed that the two plastic packets of methamphetamine had ruptured in his stomach. The autopsy report concluded that Mr. Babovec "died as a result of methamphetamine intoxication. Struggle, restraint and exertion contributed to his death" (Dkt. No. 22-3, at 8). Ms. Babovec also provides an expert affidavit stating it is "unlikely" that Mr. Babovec would have died from the methamphetamine intoxication alone (Dkt. No. 27-1).

Both parties have provided video evidence of these events, which the Court has reviewed, but these videos have no audio.

Ms. Babovec brings this action against the Saline County Detention Center staff on duty during the events described above—namely, Mike Richards, Ms. Parker, Mr. Reed, Sam Griffin, Mr. McGuire, Ryan McKinney, David Fenton, James Payne, Ms. Shelnutt (collectively, "separate defendants")—in their individual and official capacities; the Sheriff of Saline County, Mr. Pennington, in his individual and official capacity; and Saline County itself.

## II. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. Analysis

### A. Individual Capacity Claims Against Separate Defendants And Mr. Pennington

Ms. Babovec claims that separate defendants and Mr. Pennington, in their individual capacities, were deliberately indifferent to Mr. Babovec's serious medical needs and used force against him unconstitutionally. Separate defendants and Mr. Pennington seek qualified immunity and summary judgment on these claims.

1.      **Qualified Immunity**

Separate defendants and Mr. Pennington claim they are entitled to qualified immunity. A government official sued in his individual capacity may raise the defense of qualified immunity to § 1983 claims. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (citation omitted) (internal quotation marks omitted). To determine if a qualified immunity defense applies, the Court must conduct a two-prong inquiry by examining: "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct." *Id.* at 960 (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

For the reasons explained in this Order, the Court determines that the facts alleged by Ms. Babovec when viewed in the light most favorable to her with all reasonable inferences drawn in her favor make out violations of Mr. Babovec's constitutional rights by separate defendants and Mr. Pennington. Further, those constitutional rights were clearly established at the time of separate defendants' alleged misconduct. *See Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048-49 (8th Cir. 1989) (unconstitutional use of force against pretrial detainee); *Boswell v. Sherburne Cnty.*, 849 F.2d 1117, 1121 (8th Cir. 1988) (deliberate indifference to pretrial detainee's serious medical need); *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) ("[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for

7

his own culpable action or inaction in the training, supervision, or control of the subordinate."). Thus, on the record before the Court, separate defendants and Mr. Pennington are not entitled to qualified immunity.

### 2. Deliberate Indifference To Serious Medical Needs

Ms. Babovec brings a deliberate indifference claim pursuant to the due process clause of the Fourteenth Amendment. Under this claim, separate defendants may be liable if Mr. Babovec, as a pretrial detainee, suffered from an objectively serious medical need and separate defendants knew of the need yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *see Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006) ("After *Bell*[ *v. Wolfish*, 441 U.S. 520 (1979)] noted the difference between Substantive Due Process and Eighth Amendment protections, we have recognized that it is an open question but have repeatedly applied the deliberate indifference standard . . . to pretrial detainee claims that prison officials unconstitutionally ignored a serious medical need or failed to protect the detainee from a serious risk of harm."). For separate defendants to be liable, Ms. Babovec must prove they personally knew of and disregarded an excessive risk to health and safety. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citation omitted).

Ms. Babovec claims that separate defendants were deliberately indifferent to Mr. Babovec's serious medical needs when (1) he exhibited signs of drug intoxication, requested medical care, and was denied medical care and (2) they did not immediately summon medical care for him when he was unconscious following their use of force on him. The Court denies

8

defendants' motion for summary judgment as to both of Ms. Babovec's deliberate indifference to serious medical needs claims. Based on the record before the Court, viewed in the light most favorable to Ms. Babovec, a reasonable juror could conclude that Mr. Babovec suffered from an objectively serious and obvious medical needs and that separate defendants, all of whom Ms. Babovec contends were on duty on the day these events took place, personally knew of yet deliberately disregarded those needs.

Regarding Ms. Babovec's first claim, she alleges that, while in separate defendants' custody, Mr. Babovec showed objective signs of methamphetamine intoxication, requested emergency medical care, increased in agitation, and lost control of his bowels. Ms. Babovec alleges that Mr. McGuire and others, instead of seeking help for Mr. Babovec, taunted him. Ms. Babovec also alleges that Saline County Detention Center staff, instead of seeking medical treatment for Mr. Babovec, threatened to tase him for requesting assistance and medical assistance. Likewise, regarding Ms. Babovec's second claim, she alleges that, during the altercation with staff, Mr. Babovec complained that he was having chest pains and could not breathe before he passed out, but that separate defendants did not attempt to summon medical care immediately and instead laid him face down in another cell for several minutes before they attempted to provide medical care and summoned professionals. Though defendants may dispute many of these facts, such disputes are genuine disputes of material fact that should be tried. These facts are material because, if true, they could allow a reasonable juror to find personal knowledge and a deliberate disregard on the part of separate defendants. In addition, Ms. Babovec provides an expert report detailing the reasons separate defendants purportedly exhibited deliberate indifference (Dkt. No. 27-2, at 13).

9

The Court also denies defendants' motion for summary judgment as to Ms. Babovec's deliberate indifference to serious medical needs claim against Mr. Pennington in his individual capacity. Mr. Pennington was not present during the events at issue here, so he could not have had personal knowledge of Mr. Babovec's alleged serious medical needs. However, personal participation is not required for personal liability to attach to a supervisor: supervisor liability may be imposed against the supervisor in his individual capacity for his own culpable choice between action or inaction in the training, supervision, or control of his subordinates. *See Clay*, 815 F.2d at 1170. To incur liability for the analogous Eighth Amendment claim by a convicted inmate, the Eighth Circuit has stated that the supervisor's corrective inaction must constitute deliberate indifference: "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (citations omitted) (internal quotation marks omitted).

Here, Mr. Pennington notified the County that medical care professionals were needed in the detention center and that the training received by Saline County Detention Center staff was insufficient to protect detainees. He even arranged with a doctor friend to volunteer at the facility for some time early in his career as sheriff and before these events with Mr. Babovec (Dkt. No. 22-2, at 67-69). In addition, there may have been multiple complaints and lawsuits regarding inadequate medical care at the facility. A reasonable juror could conclude that Mr. Pennington knew of the need for medical care professionals and additional training and could have done more to alleviate these problems but chose not to; that this equals facilitating, approving, condoning, or turning a blind eye to the problem; and that this constitutes deliberate indifference to the serious medical needs of detainees.

### 3. Unconstitutional Use Of Force

The use of force against pretrial detainees, which is analyzed under the due process clause of the Fourteenth Amendment, must be objectively reasonable in light of the situation presented. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). Relevant factors include

> the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether it was used for punishment or instead to achieve a legitimate purpose such as maintaining order or security within [the facility] and whether a reasonable officer on the scene would have used such force under similar circumstances.

*Id.* at 1061 n.7. "Constitutionally infirm practices are those that are punitive in intent," but force may be used if it is rationally related to a legitimate purpose, such as safety, security, and efficiency, and not excessive in light of that purpose. *Johnson-El*, 878 F.2d at 1048; *see Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) ("Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment."). Because of the similar lack of bright lines for judging a police officer's use of force in the Fourth Amendment context, at least two circuits have noted that "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 411 (5th Cir. 2009) (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) ("[R]easonableness under the Fourth Amendment should frequently remain a question for the jury.")).

The Court denies defendants' motion for summary judgment as to Ms. Babovec's unconstitutional use of force claim against separate defendants but grants defendants' motion as to Ms. Babovec's unconstitutional use of force claim against Mr. Pennington. In support of her claim, Ms. Babovec contends that, while separate defendants had Mr. Babovec pinned to the ground, Mr. Babovec was not resisting, was yelling "I am not resisting," and was complaining of

chest pains and the inability to breathe. According to Ms. Babovec, separate defendants continued to push down on Mr. Babovec's chest and tasered him, which they had threatened to do if Mr. Babovec continued to request medical care, until he passed out. Ms. Babovec's expert report may clarify that she is alleging that Ms. Parker, Mr. Reed, Mr. Griffin, Mr. McGuire, Mr. Fenton, Mr. Payne, and Ms. Shelnutt directly participated in the scuffle in some way, while Mr. Richards and Mr. McKinney were supervisors who were present but failed to supervise or control the others adequately during the scuffle (Dkt. No. 27-2, at 10, 16-17). *See Clay*, 815 F.2d at 1170. Because Mr. Richards and Mr. McKinney were present, the record may support that they personally participated or facilitated, approved, condoned, or turned a blind eye toward the conduct. *See Boyd*, 47 F.3d at 968. The same cannot be said of Mr. Pennington, who was not present. As further explained in the official capacity section below, there is no other evidence showing that Mr. Pennington is culpable for failing to train, supervise, or control separate defendants adequately in regard to the use of force.

> B.   **Claims Against The County**

Ms. Babovec alleges that the County had unconstitutional customs leading to the violation of Mr. Babovec's constitutional rights and that the County is liable for failing to train adequately the Saline County Detention Center staff. Because official capacity claims are equivalent to claims against the entity for which the official works, *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), Ms. Babovec's claims against separate defendants and Mr. Pennington in their official capacities follow the same analysis as those against the County.

To establish § 1983 liability against Saline County, Ms. Babovec must establish that a violation of Mr. Babovec's constitutional rights occurred and that a policy or custom of the

County was a moving force behind the alleged constitutional violation. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Again, for the reasons above, Ms. Babovec has sufficiently alleged constitutional violations.

### 1. Official Policy And Custom

Ms. Babovec appears to argue that the County's policy or custom of not providing medical care professionals at the Saline County Detention Center was the moving force behind the violation of Mr. Babovec's constitutional rights, particularly the alleged deliberate indifference to his serious medical needs. "Policy or custom" can come from the decisions of any officials "whose edicts or acts may fairly be said to represent official policy." *Id.* at 694. A County may be liable for a single decision by its properly constituted legislative body, as those decisions constitute official polices. *Pembaur v. City of Cincinnati*, 75 U.S. 469, 480 (1986).

Ms. Babovec also attempts to establish liability based on the County's alleged custom of condoning the use of unconstitutional force or deliberate indifference to serious medical needs by Saline County Detention Center staff. Liability through custom is demonstrated by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) Th[e] plaintiff['s] injur[y] by act pursuant to the governmental entity's custom, *i.e.,* [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998) (citations omitted). In other words, to base liability on a custom, a plaintiff must show the existence of a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).

Here, based on record evidence, the Saline County Quorum Court decided not to staff the Saline County Detention Center with medical care professionals despite Mr. Pennington asking them to do so. Whether this was a decision made through policy or practice continued through custom, based on the record evidence, a reasonable juror could conclude that Saline County's decisions or practices were the moving force behind the violation of Mr. Babovec's constitutional rights. Therefore, the Court denies defendants' motion for summary judgment on Ms. Babovec's official capacity claims based on alleged policy and custom.

### 2. Failure To Train

Ms. Babovec also may establish § 1983 liability against the County by showing that the County's deficient training of its officers caused the violation of Mr. Babovec's constitutional rights. *See Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998). To state a claim for failure to train, Ms. Babovec must show: (1) the County's training practices were inadequate; (2) the County was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice; and (3) a deficiency in the training procedures actually caused the violation of Mr. Babovec's constitutional rights. *Parrish*, 594 F.3d at 997 (quoting *Andrews*, 98 F.3d at 1076 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989))). "In other words, the plaintiff must demonstrate that the [county] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Andrews*, 98 F.3d at 1076 (citation and internal quotation marks omitted). To demonstrate notice for purposes of failure to train, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to establish deliberate indifference for purposes of failure to train," *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)),

14

but notice also may be implied when the failure to train "is so likely to result in a violation of constitutional rights that the need for training is patently obvious," *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (citation omitted).

Ms. Babovec appears to argue that the County is liable for failure to train Saline County Detention Center staff on (1) the difference between the rights of pretrial and posttrial detainees; (2) the proper use of a taser; and (3) and how to recognize when a detainee needs medical care. Ms. Babovec does not point to evidence of a pattern of similar constitutional violations by employees without the first or second type of training, and she makes no argument that the need for training in these areas is patently obvious. *See City of Okla. v. Tuttle*, 471 U.S. 808, 833 (1985) (holding that, absent the need for training being patently obvious, a policy of inadequate training cannot be found on the basis of one incident).

As for Ms. Babovec's third argument, based on the record before the Court, a reasonable juror could conclude that the County inadequately trained personnel on how to recognize when a detainee needs medical care, were on notice that its procedures were inadequate and likely to result in a constitutional violation, and caused the violation of Mr. Babovec's constitutional rights. Based on the record, all Saline County Detention Center staff had first responder and CPR training and were trained how to recognize when someone was intoxicated (Dkt. No. 27-6, at 22-24). However, in addition to the allegation that there were multiple complaints and lawsuits regarding inadequate medical care at the facility, Mr. Pennington had warned Saline County officials that the training provided, in conjunction with the lack of medical care professionals at the detention center, was inadequate (Dkt. No. 22-2, at 67-68). *See also Larson*, 76 F.3d at 1454 (finding that notice may be implied when the failure to train "is so likely to result in a constitutional violation that the need for training is patently obvious"). Thus, the

Court denies defendants' motion for summary judgment as to Ms. Babovec's failure to train claims against the County.

**IV.    Conclusion**

In sum, the Court grants in part and denies in part defendants' motion for summary judgment. The Court grants summary judgment as to Ms. Babovec's unconstitutional use of force claim against Mr. Pennington in his individual capacity. That claim is dismissed with prejudice. The remaining claims will proceed to trial consistent with this Order.

IT IS SO ORDERED this the 21st day of January, 2015.


_Kristine G. Baker_
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE