```
1              IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF ARKANSAS
2                     WESTERN DIVISION

3    ROBIN BABOVEC, As Special
     Administratrix Of The Estate
4    Of CASEY BABOVEC, Deceased,
                            Plaintiff,
5         v.
     DEPUTY AND OFFICERS MIKE
6    RICHARDS, TONYA PARKER,              No. 4:13CV00699 KGB
     CALVIN REED, SAM GRIFFIN,
7    DION MCGUIRE, RYAN MCKINNEY,         Friday, January 30, 2015
     DAVID FENTON, JAMES PAYNE,           Saturday, January 31, 2015
8    NANCY SHELNUTT, BRUCE                Little Rock, Arkansas
     PENNINGTON, JOHN and JANE
9    DOES I-V, and COUNTY OF
     SALINE,
10                    Defendants.

11
                 TRANSCRIPT OF TRIAL - VOLUME 5
12          BEFORE THE HONORABLE KRISTINE G. BAKER,
             UNITED STATES DISTRICT JUDGE, and a jury
13

14   APPEARANCES:

15   On Behalf of the Plaintiff:

16       MR. JAMES F. SWINDOLL, Attorney at Law
         MS. EMILY KOSTELNIK, Attorney at Law
17         Law Offices of James F. Swindoll
           212 Center Street, Suite 300
18         Little Rock, Arkansas  72202

19
     On Behalf of the Defendants:
20
         MR. GEORGE D. ELLIS, Attorney at Law
21         Ellis Law Firm P.A.
           126 North Main Street
22         Benton, Arkansas  72015

23

24       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
25   transcription.
```

Christa R. Jacimore, RDR, CRR, CCR
United States Court Reporter

1          **INDEX - VOLUME 5** (January 30 and 31, 2015)

2

3    Jury Note................................................. 619

4

5    Jury Note................................................. 624

6

7    Jury Note................................................. 633

8

9

10
     Jury's Verdict........................................... 642
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceeding on Friday, January 30, 2015, at 9:03 a.m., jury

2  not present.)

3         THE COURT:  Good morning.  We are on the record with

4  counsel and the parties outside the presence of the jury.  My

5  plan today, we'll just put the jury in the box and recess and

6  stand in deliberation.

7      Is there anything that we need to take up?  Counsel for the

8  plaintiff?

9         MR. SWINDOLL:  Your Honor, only the schedule that you

10  would hold during deliberation.  Will you break from the

11  deliberation from 12 to one-thirty as you've been doing or

12  should we all just remain kind of in orbit, as it were?

13         THE COURT:  What I would say is just remain in orbit.

14  We'll check with them close to the noon hour if we haven't heard

15  from them prior to that about ordering lunch, and obviously any

16  information that we learn from them, we'll pass along to you

17  all.

18      You don't have to stay around here as long as you stay

19  within a proximity where we can reach you, and then you all can

20  come back.  If we have a note or if we have a communication from

21  the jury, we'll let you know that.

22         MR. SWINDOLL:  Thank you, your Honor.

23         THE COURT:  All right.  Anything for counsel from the

24  defense?

25         MR. ELLIS:  No, ma'am.

1    THE COURT:  All right.  Why don't we put our jury in

2  the box.

3    (Jury entered the courtroom.)

4    THE COURT:  Ladies and gentlemen, good morning.  We

5  will stand in recess while you deliberate, and the same holds

6  true today as it did yesterday.  We follow your schedule today.

7  We will check in with you close to the noon hour if we have not

8  heard from you in regard to lunch.

9    So with that, we'll stand in recess while the jury

10  deliberates.

11    Please rise.

12    (Jury exited the courtroom.)

13    THE COURT:  We're back on the record with counsel and

14  the parties outside the presence of the jury.

15    We will stand in recess while the jury deliberates.  You

16  can leave numbers, contact information, with Ms. Washington.

17    Do you have a question?

18    MR. SWINDOLL:  Just one thing, your Honor.  Last night

19  we realized that the MP4 videos that the jury has been watching

20  are not in that file.  The MP4s were converted and used from our

21  computer.  We brought a disk with the MP4 files.  I don't know

22  whether the Court would want to entertain that, but if the jury

23  asked about that, it would be available and I guess decided

24  then.

25    THE COURT:  Mr. Ellis, have you reviewed those and

1    what is your position on that?

2                MR. ELLIS:  I don't take a position on that, your

3    Honor.  Let's not borrow trouble.  It may be that they don't

4    want to see them.  If they ask to see them, then we'll deal with

5    the problem.

6                THE COURT:  I think that they've already asked for

7    equipment to review the videos.

8                MR. ELLIS:  Oh, okay.  Good.

9                MR. SWINDOLL:  Yes.

10               THE COURT:  So they've already done that and we

11   provided it yesterday.  What IT provides them is a stripped-down

12   laptop.  You can't get internet access in this courthouse if you

13   tried, generally.  It's a stripped-down laptop that will only

14   play that video.  IT handles that for us.  They've made that

15   request.  I don't know what you all understood with the exhibits

16   being tendered yesterday.

17               MR. SWINDOLL:  I understood we tendered the original

18   video just as Mr. Ellis did.  They have two copies of the

19   original detention video and they do not have my MP4s, which is

20   just taken and clipped onto MP4s so we could view them here in

21   the courtroom.

22               THE COURT:  I understand.  So is your request that

23   they be provided?  And if so, Mr. Ellis, what's your response to

24   that request?  That's just not --

25               MR. SWINDOLL:  It's not a request that they be

1    provided.  I just thought last night if it comes up, I just

2    wanted you to know that we do have those available and we can

3    argue about it later if we need to.

4              THE COURT:  And if we receive a question in that

5    regard, my expectation would be it would be through a juror note

6    and we'll handle it that way.

7         They made the request last night almost immediately when

8    they went back in there for the ability to play the video.

9         All right.  If there's nothing further then, we'll stand in

10   recess.  You can provide your information to Ms. Washington and

11   we will reach out to you if you're not here in the courthouse or

12   in the courtroom if we need to contact you.

13        Stand in recess.

14        (Recess from 9:09 a.m. until 12:00 p.m., jury not present.)

15             THE COURT:  We are on the record with counsel and some

16   of the parties outside of the presence of the jury.

17        We have a note, our second note.

18        I will read it to you now and then I will let you all

19   comment and I will tell you what I propose to do in response.

20        It says, Question 1:  Ryan McKinney or McKinley?  If the

21   documents are incorrect, do they need to be changed before

22   confirming decision?

23        Question 2:  Can we see the transcript from Calvin Reed's

24   testimony?

25        Question 3:  Please provide guidance on lunch.

1          Thank you.  Signed by the jury foreperson.

2          So Question 1 is the name issue with Mr. McKinney or

3    Mr. McKinley.  Question 2 is the transcript from Mr. Reed's

4    testimony.  We'll start with the easy one first that I can

5    answer for everyone.  Lunch has already been ordered and will be

6    delivered soon for them.

7          Mr. Ellis?

8              MR. ELLIS:  The original pleadings referred to Ryan

9    McKinney as McKinley and I tried to straighten that out and

10   Mr. Swindoll would straighten it out and then a word processor

11   would take over.  But it is McKinney.

12             THE COURT:  I will tell you that on the docket sheet

13   in this case it is McKinley, and so when we prepared the verdict

14   form, the verdict form tracked McKinley.  So I'm happy to --

15   what I may do is tell them that his name is Mr. McKinney and

16   they may use the form that was provided.

17             MR. ELLIS:  And we've stipulated on the record that if

18   they return a verdict making reference to McKinley, we know that

19   it's McKinney.

20             THE COURT:  I would rather do that than have two forms

21   go back.

22             MR. ELLIS:  Yes.

23             MR. SWINDOLL:  Yes.

24             THE COURT:  And the second question about Reed's

25   testimony, the answer is no.

1          MR. SWINDOLL:  Absolutely.

2          THE COURT:  My response to that is, no, you have all

3    of the evidence in this case.  You must make your decision based

4    on the evidence and the instructions provided.  That's my

5    standard answer when people ask for other things.

6          And then with regard to number three, guidance on lunch, as

7    I said, what I will do is write out the response.  You all are

8    welcome to review the note if you wish, and I will read the

9    response after I've written it out and then we'll send it back.

10         I will also say that while we were in the hallway waiting

11   on this proceeding, they sent word back that they were having

12   trouble again with the video, so our IT folks have gone in and

13   out of that deliberation room to help them with the computer

14   only.

15         MR. ELLIS:  Was that -- can I inquire, your Honor?

16   Was that a recent remark that they made about the --

17         THE COURT:  Yes, while I was standing in the hallway.

18         MR. ELLIS:  Okay.  Because we thought it was going.

19   The IT guy I thought had it going.

20         THE COURT:  He's been in and out a couple of times

21   this morning.

22         MR. ELLIS:  Okay.

23         THE COURT:  Here's what I propose saying.  Question 1

24   again:  Ryan McKinney, or Ryan McKinley, if the documents are

25   incorrect do they need to be changed before confirming decision?

1        My response, Question 1:  Please use the forms provided.

2   All are aware the forms state Ryan McKinley and have stipulated

3   his name is Ryan McKinney, but all agree you should use the

4   forms provided.

5        Question 2:  Can we see the transcript from Calvin Reed's

6   testimony?

7        The response:  No.  You have all of the evidence in this

8   case.  You will have to make your decision based on what you

9   recall of the evidence and the instructions provided.

10       Question 3:  Please provide guidance on lunch.

11       Question 3:  Lunch has been ordered and will be delivered

12  soon.

13       Is that acceptable to plaintiff's counsel?

14           MR. SWINDOLL:  It is, your Honor.

15           THE COURT:  Acceptable to defense?

16           MR. ELLIS:  Yes, ma'am.

17           THE COURT:  I'm going to hand this note to -- I've

18  signed it, dated it, at 12:05.  I'm going to hand it -- I'm

19  going to hand you this, too, but if you'll bring both of those

20  back out for Ms. Washington to make a copy of, too.

21       All right.  With that, is there anything else that we need

22  to take up at this time?

23       Counsel for the plaintiff?

24           MR. SWINDOLL:  No, your Honor.

25           THE COURT:  Counsel for the defense?

1          MR. ELLIS:  No, your Honor.

2          THE COURT:  We'll stay in recess.  If there's any

3   other word, we will let you all know.

4          MR. SWINDOLL:  Thank you, your Honor.

5      (Recess at 12:10 p.m.)

6                    REPORTER'S CERTIFICATE

7      I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

8

9                              Date:  November 10, 2015
    /s/ Christa R. Jacimore, RDR, CRR, CCR
10      United States Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings continuing at 4:08 p.m.; jury not present.)

2          THE COURT:  We're on the record with counsel and the

3   parties outside the presence of the jury.  I have received

4   another note.  It's at four o'clock p.m.

5      "After intense deliberation and critical analysis, the jury

6   has reached unanimous decisions on 16 interrogatories and is

7   deadlocked on two.  What additional instructions can you provide

8   us to reach a unanimous decision?"

9          The option is obviously the Allen charge.  Mr. McBride is

10  copying it now with all the comments.  I'll let you both take a

11  look at that.  I'm not inclined one way or the other, and I'm

12  open to argument from both sides as to what, if anything, to do

13  in response.  I don't know that I can say much, if anything,

14  other than the Allen charge based upon the authorities in the

15  Eighth Circuit.  But I'll let you both look at that, Allen

16  charge, dynamite charge, whatever you want to call it.

17          MR. SWINDOLL:  Yeah.

18          THE COURT:  I'm happy for anybody who wants to to

19  inspect the note if you want to look at it.

20          MR. SWINDOLL:  Just to see who signed it.

21          MR. ELLIS:  I have a question, Your Honor.

22          THE COURT:  Yes.

23          MR. ELLIS:  Are you proposing to let them return the

24  verdict on the 16 and then give them the Allen on the two?

25          THE COURT:  I don't know.  I'm open to argument from

1  both sides on what to do with it.

2          MR. ELLIS:  Your Honor, I think, yeah, you are going

3  to, obviously, have to give them an Allen instruction on the

4  remaining two.  But it seems to me, in fairness to the 16 -- and

5  I don't know which way it will go -- the 16, those verdicts

6  should be returned.  They are separate verdicts.

7          THE COURT:  My inclination is not to do that at this

8  time.  My inclination is, if I give the Allen charge, I give the

9  Allen charge and send them back in there.  Then, wherever we go

10  after that, if I get the same note back, that they can't reach a

11  decision on those, I receive or we call it a day with all of

12  these issues.

13          MR. ELLIS:  But they've reached a verdict in 16 of

14  them.

15          THE COURT:  I don't know which 16.

16          MR. ELLIS:  I understand.

17          THE COURT:  And if you recall how these verdict forms

18  were structured, there are certain ones that depended on answers

19  to other ones.  I'm not inclined to receive anything at this

20  point.

21          MR. ELLIS:  Okay.  Just for the record, Your Honor, is

22  my record protected on that point?

23          THE COURT:  It is.  And I'll let Mr. Swindoll respond

24  to it if you wish to respond to it.

25          MR. SWINDOLL:  Your Honor, I think the Court is

1    correct.  I think it's an all or nothing, so I ask the Court not

2    to do that.

3           THE COURT:  All right.  Just so it's clear, the

4    reasoning of the Court, the way the verdict forms went back to

5    the jury, several of the questions at the end depended upon

6    answers to interrogatories that preceded those at the end.  I

7    don't know what 16 are unanimous, what two are not unanimous.  I

8    don't know how that split is structured.  I don't want to

9    receive any verdicts before we decide that we're terminating the

10   jury's deliberation, because I don't want to disrupt that.  I

11   don't want to know that, and I don't want to impact that.  The

12   first 1 through 18 were as to individual defendants.  But the

13   last ones depended upon answers to those individual defendant's

14   questions.  So it would be conceivable that they have reached

15   verdicts on some of the latter questions as to some but not

16   others.  And I just don't want to disturb that now.

17          MR. ELLIS:  So let's play the hand, Your Honor,

18   completely.  If they come back after your dynamite charge, if

19   they come back and they say no change, then do those 16 verdicts

20   get returned?

21          THE COURT:  I'll hear argument on it.  I haven't made

22   a decision as to that.  But as of right now, I'm not going to

23   receive them for those reasons that I said, the way these

24   verdicts are structured.  Is there any objection to my giving

25   the Allen charge?

```
1              MR. SWINDOLL:  No, Your Honor.

2              MR. ELLIS:  No.

3              THE COURT:  And I will give it with the last

4    paragraph.  It's indicated that I give it with the last

5    paragraph after deliberations have begun.  And that last

6    paragraph simply says:  "You are reasonable people.  Go back now

7    to continue your deliberations using your best judgment."

8         Mr. McBride, will you prepare a copy of the Allen charge?

9    Actually, prepare a copy of the Allen charge in writing.  I'll

10   call them in.  I'll read it.  We'll send them back out with a

11   written copy of that charge as well like we've done the other

12   instructions, if that's acceptable to plaintiff's counsel.

13             MR. SWINDOLL:  It is, Your Honor.

14             THE COURT:  Is that acceptable to the defense, Mr.

15   Ellis?

16             MR. ELLIS:  Yes, ma'am.

17             THE COURT:  All right.  You don't need to bring them

18   in yet, because we have to work up a written copy of it.

19        I was also asked about whether -- the Court security staff

20   asked if I would permit the jury to deliberate tomorrow.  And I

21   will if they wish to do so.  It's up to them.  And I don't have

22   any problem.  We will start a criminal jury trial in here on

23   Monday.  But if we are in the process of doing that, Judge

24   Holmes has a jury room next door.  And their case for next week

25   has gone off the docket, so I can move this jury to his jury
```

1    deliberation room, or I can leave this jury deliberating in
2    here, and we can conduct our proceedings.  And if it's a one-day
3    jury trial, we can move that jury there.  So the long and the
4    short of it is we have enough spaces to accommodate everyone.  I
5    will permit this jury to continue late tonight, to deliberate
6    Saturday or to come back on Monday, whatever they choose to do.
7         Mr. Swindoll, have you had an opportunity to review draft
8    Instruction No. 16?
9            MR. SWINDOLL:  I have, Your Honor.  And I have no
10   objection.
11           THE COURT:  Mr. Ellis?
12           MR. ELLIS:  It's fine.  No objection.
13           THE COURT:  All right.  Let's put our jury back in the
14   box.
15        (Jury present.)
16           THE COURT:  Ladies and gentlemen of the jury, I've
17   received the note that you have sent to me from four o'clock
18   today.  And in response to your note, I'm going to read the
19   Court's Instruction No. 16.  You will be provided with a written
20   copy of this instruction in the jury room.
21        As I told you earlier, it is your duty to consult with one
22   another, deliberate and try to reach agreement if you can do
23   that without violating your conscience.  Of course, you must not
24   give up your honest beliefs about the evidence just because of
25   what other jurors believe to be the truth or just because you

1    want to reach a verdict.  Each of you must decide the case for

2    yourself but only after considering and discussing the evidence

3    with your fellow jurors.

4         When you deliberate, you should be willing to reexamine

5    your own views and change your mind if you decide you were

6    mistaken.  For all jurors to agree, you will have to openly and

7    frankly examine and discuss the questions you have to decide.

8    Listen to the opinions of others and be willing to reexamine

9    your own views.

10        Finally, remember that you are not representing any side.

11   You are, instead, judges, judges of the facts, judges of the

12   believability of the witnesses and judges of the weight of the

13   evidence.  Your only job is to find the truth from the evidence.

14   You may take all the time you need.

15        There is no reason to think that this case would be tried

16   in a better way or that a different jury would be more likely to

17   reach a decision.  If you cannot agree on a verdict, the case is

18   left open.  And it will have to be retried at some later time.

19        You are reasonable people.  Please go back now to continue

20   your deliberations using your best judgment.

21        It is 4:25.  I will let you know, as I said at the

22   beginning of deliberations, that we are on your schedule at this

23   point.  You are welcome to deliberate as long as you would like

24   today.  You are welcome to come back on Saturday to deliberate.

25   The Court will make itself available, and the Court will be

1  here, or you are welcome to come back on Monday to deliberate.

2  The Court will make itself available, and the Court will be

3  here.

4      So with that, I will send you back into the jury room with

5  this note given to the court security officer and ask you to

6  continue to deliberate.

7      (Jury out at 4:25 p.m.)

8      THE COURT:  Is there anything we need to take up for

9  the plaintiff?

10      MR. SWINDOLL:  No, Your Honor.

11      THE COURT:  For the defense?

12      MR. ELLIS:  Yes, ma'am.  I'm just rolling this in my

13  mind.  If those 16 verdict forms are any of the first 18, then

14  that jury has reached a verdict on those 18.  Now, I would ask

15  respectfully that the Court send for those verdict forms,

16  examine them.  And if that's the case, this case is over for

17  those 16 if that's the case.

18      Now, if it's something other than those first -- out of

19  that first 18, then that's another story.  I would like for the

20  Court to examine those verdicts.  That's my motion.

21      MR. SWINDOLL:  Your Honor, until the jury has

22  determined that they can't answer the two interrogatories left,

23  I ask that we do nothing and hope they can resolve this among

24  themselves.  That's the best answer for all of us.

25      THE COURT:  And I will say this in contemplating this

1    motion.  And, obviously, this situation, like all situations,

2    presents its own unique challenges.  My thought, Mr. Ellis, is

3    if we hear from this jury that they cannot reach a decision,

4    that we bring them in the box, receive the verdicts, as we would

5    in any other case.  And we will at that point examine them.  I

6    won't dismiss the jury at that point.  What I would do is ask

7    that we receive the verdicts in open court, send them back into

8    the deliberation room.  You need to poll them after we bring

9    them back out.  But essentially we would bring them in, receive

10   whatever it is that we have, I put them back in the deliberation

11   room.  We would all inspect what we have at that point if they

12   tell me they can't reach a decision on all of these questions.

13   And then you can bring them back out, poll them on verdicts, if

14   they are verdicts, make appropriate motions or handle this

15   however we would like.

16        You know, my concern is what if I have a "yes" but I don't

17   have a number at this point.  I mean, I don't really know that I

18   want to tamper with anything.  Right?  I hear what you are

19   saying about a verdict on 16 questions.  But I don't know what

20   that means to them.  I know what it means to me.  I know what it

21   means to you.  Mr. Swindoll can guess what it means.  But I'm

22   not sure what it means to them yet.  So until this whole process

23   is done, I would rather not get involved in it.  But I think

24   what you are proposing is absolutely acceptable after this

25   process runs its course.  And if that process is I hear at five

1    till five they are done, they can't reach a decision and they

2    don't want to come back, then we'll come back on the record,

3    decide how to proceed.  And if we decide how to proceed, we can

4    call it a day with this jury, we bring them in, receive those

5    forms, send them back and do as I propose.

6        The reason I would not dismiss them at that time is I want

7    you all to have an opportunity to poll them, if there are

8    verdicts, as to what those are.  But I want you to have an

9    opportunity to sort of examine it and inspect them before I put

10   you on the spot to do that with them in the courtroom.  Does

11   that make sense?

12           MR. ELLIS:  It makes sense.  I just don't agree with

13   you.

14           THE COURT:  I understand.  You know, I'm happy to hear

15   your arguments otherwise.  I think there's a problem with

16   injecting myself in this process until it runs its course.

17           MR. ELLIS:  I know.  This is a unique case.  But my

18   point is -- and it's a simple one, and I've already said it.

19   Assuming that those 16 come out of those first 18, this case is

20   over for 16 of my clients.

21           THE COURT:  If the answer is "no."  Right?  If the

22   answer is "no."

23           MR. ELLIS:  Assuming it's "no," yes.  I've had my say.

24           THE COURT:  But if I have an answer that's "yes" and I

25   don't have a number, then it's not done yet either.

1          My ruling is, I overrule the motion.  I'm not going to

2     grant the relief requested.  I'm going to let this process run

3     its course.  We'll bring them in.  But at the end of it, we'll

4     receive whatever it is we receive, and we'll proceed from there

5     after hearing argument and discussion, assuming they come back

6     and tell me that they haven't reached a verdict on all.

7               MR. ELLIS:  I understand the Court's position, and the

8     Court I think understands mine.

9               THE COURT:  I do.  I do.

10        Is there anything else?

11              MR. SWINDOLL:  No, Your Honor.

12              THE COURT:  Anything else, Mr. Ellis?

13              MR. ELLIS:  No, ma'am.

14              THE COURT:  If we hear anything, we'll inquire again

15    around five o'clock, the dinner hour, to see if they want us to

16    order dinner.  And we'll report back to you.

17         (Proceedings continuing at 5:21 p.m.; jury not present.)

18              THE COURT:  We are on the record with counsel and the

19    parties outside the presence of the jury.  I received another

20    note at 5:15.  The note states:  "The jury has decided to

21    adjourn at 5:15 today and reconvene at 9 a.m. on Saturday,

22    January 31st, 2015," signed by the foreperson.

23         What I will do is bring them in the box.  I'll read the

24    recess instruction.  They will leave for the day.  We'll be back

25    tomorrow morning at nine.

1          MR. ELLIS:  I would -- at this point, Your Honor, I
2     renew my motion that I made earlier with respect to the 16.  But
3     I would ask that, as part of that motion, in considering it,
4     that you ask the jury to bring you their interrogatory verdict
5     forms so that you can examine them and confirm that my suspicion
6     is correct, that 16 of these 18, that 16 of -- there's 16 "nos,"
7     which means there are eight probably of these defendants who are
8     out of this case.  That's my motion.  You don't have to tell the
9     parties necessarily what it says, but I think you need to know.
10          THE COURT:  Mr. Swindoll?
11          MR. SWINDOLL:  Your Honor, this is a process.  I think
12     the process needs to work all the way through.  The jury,
13     obviously, wants to go all the way through.  They wouldn't have
14     adjourned, or they would have just decided.  They are still
15     deciding this case.  I ask that we not interfere with that until
16     we are sure they can't.
17          MR. ELLIS:  For 16 of those interrogatories, the
18     process has worked.  It's over.  I think my record is made, Your
19     Honor.
20          THE COURT:  I understand.  And I guess my question
21     would be, Mr. Ellis, what would you propose that I do with that
22     knowledge if I gain it?
23          MR. ELLIS:  Well, let's say that those 16 -- let's
24     assume they are "nos," which would be -- and we can assume each
25     individual defendant has two interrogatories.

1          THE COURT:  Right.

2          MR. ELLIS:  Which means we can assume that if eight of

3     those defendants then have two "nos" each, this case is over for

4     them.  They won.

5          THE COURT:  But what should I do with that knowledge

6     if I gain it now versus if I gain it at the end of this process?

7          MR. ELLIS:  You need to look at it.  And if it says --

8     if it says that, you need to dismiss as against them, and we can

9     go forward with respect to the others.

10         THE COURT:  I will deny the motion at this time.  My

11    reasoning for that is I've already given the Allen charge.  I

12    won't give a second Allen charge.  We'll let this process

13    continue through.  We'll receive the information, whatever that

14    is, whether they are able or unable to reach a verdict on all at

15    the conclusion of the process.  And we'll proceed, as I said

16    earlier, which is, I will receive whatever they have reached in

17    terms of the documentation when they believe they are done with

18    the process.  And we'll make those decisions at that time.

19         With that, I'll put the jury in the box so they can get on

20    their way.

21         Are we ready to do that, counsel for the plaintiff?

22         MR. SWINDOLL:  Yes, Your Honor.

23         THE COURT:  Counsel for the defense?

24         MR. ELLIS:  Yes, ma'am, subject to my motion.

25         (Jury present.)

1              THE COURT:  Ladies and gentlemen, we will recess until

2       tomorrow at 9 a.m., at 9 a.m., on Saturday, January 31st, based

3       upon the note that I've received from you.

4              With that, during this recess and every other recess, do

5       not discuss this case among yourselves or with anyone else,

6       including your family and friends.  Do not allow anyone to

7       discuss the case with you or within your hearing.  Do not

8       discuss also means do not email, send text messages, blog or

9       engage in any other form of written, oral or electronic

10      communication, as I instructed you before.

11             Do not read any newspaper or other written account, watch

12      any televised account or listen to any radio program on the

13      subject of this trial.

14             Do not conduct any Internet research or consult with any

15      other sources about this case, the people involved in the case

16      or its general subject matter.  You must keep your mind open and

17      free of outside information.  Only in this way will you be able

18      to decide the case fairly based solely on the evidence and my

19      instructions on the law.

20             You must keep your mind open and free of outside

21      information.  Only in this way will you be able to decide the

22      case fairly based solely on the evidence and my instructions on

23      the law.  If you decide the case on anything else, you will have

24      done an injustice.

25             It's very important that you follow these instructions.  I

1   may not repeat these things to you before every recess, but keep

2   them in mind throughout the trial.

3        Sorry for repeating that there, but it's been a long day.

4   I know you feel the same.  Have a very good evening.  We will

5   see you back at nine o'clock in the morning.

6        (Jury exits courtroom.)

7             THE COURT:  We're on the record with counsel and the

8   parties outside the presence of the jury.  Is there anything

9   that we need to take up at this time, counsel for the plaintiff?

10            MR. SWINDOLL:  No, Your Honor.

11            THE COURT:  Counsel for the defense?

12            MR. ELLIS:  Your Honor, who has physical possession of

13  the 16 special verdict forms that have been completed?

14            THE COURT:  Those would be in the jury room that will

15  be locked by the court security officer.

16            MR. ELLIS:  Okay.  Thank you.

17            THE COURT:  Anything else?

18            MR. SWINDOLL:  No.

19            THE COURT:  With that, we will stand in recess until

20  nine o'clock tomorrow morning.

21       (Overnight recess at 5:30 p.m.)

22                      REPORTER'S CERTIFICATE

23     I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
24
    /s/Elaine Hinson, RMR, CRR, CCR      Date:  November 17, 2015.
25  United States Court Reporter

1      (Proceedings continuing on Saturday, January 31, 2015, at
2  9:11 a.m.; jury not present.)
3          THE COURT:  Are we ready to put our jury in the box
4  and let them begin deliberation, counsel for plaintiff?
5          MR. SWINDOLL:  Yes, Your Honor.
6          THE COURT:  Counsel for defendant?
7          MR. ELLIS:  Yes, ma'am.
8          THE COURT:  All right.
9      (Jury present.)
10          THE COURT:  Good morning.  We are here in court.  I
11  will convene court this morning to recess for deliberations.
12  All our jurors are present and in the box.  If you all would,
13  please rise.
14      (Jury out at 9:12 a.m.)
15          THE COURT:  Is there anything that we need to take up
16  at this time, counsel for the plaintiff?
17          MR. SWINDOLL:  No, Your Honor.
18          THE COURT:  Counsel for the defense?
19          MR. ELLIS:  No.
20          THE COURT:  And I will make it clear, I do not mind
21  who receives this verdict.  If you would like to excuse your
22  parties, if you all want to stay and receive it, if you have
23  other folks you would like to substitute in to receive the
24  verdict -- obviously, we've had some issues that have come up,
25  and I don't know how this will go at the end.  I'm happy to

1    communicate with whomever you would like for us to communicate

2    with today.  You may leave contact information for Ms.

3    Washington.  But I've permitted that in other cases and in a

4    variety of settings.  I'm not a stickler for that.  I leave it

5    all to you.  You all can communicate with us as to the person

6    with whom to communicate today as the day goes on.  Obviously,

7    it's 9:10, 9:15.  Perhaps you won't be here that long.  But as

8    the day goes on, if you need to make other arrangements, just

9    let the Court know.  We will keep you all informed as we learn

10   of anything.  And, again, we'll check in periodically, check in

11   around lunchtime and see what we need to do.

12        MR. ELLIS:  In that regard, Your Honor, Mr. McKinney

13   is with his children this morning.  He's the only person.  But

14   we are in touch with him by telephone.  And he's authorized me

15   to move forward in his absence.  Also, Mr. Reed has a funeral at

16   eleven.

17      Is that correct?

18        MR. REED:  Yes, sir.

19        MR. ELLIS:  He's authorized us to move forward in his

20   absence also if he has to leave before they are back, if that's

21   okay.

22        THE COURT:  Certainly.  That's fine.  Given the

23   situation that we may be in at the end of this, if you all need

24   to take recesses to confer with your folks, get in touch with

25   folks by telephone, whatever the case is, let me know that.  And

1    we'll do that as we need to today as we move through however

2    this case turns out.  All right?

3        With that, we will stand in recess.  We'll be here.  I'm

4    not going to go anywhere until this is finished or until they

5    tell us they want to go home.  So if there's anything you all

6    need, don't hesitate to let us know.  Thank you.

7        (Proceedings continuing at 11:19 a.m.; jury not present.)

8            THE COURT:  We are on the record with counsel and the

9    parties outside the presence of the jury.  At 11:05 I was handed

10   another jury note.

11       "After intense analysis, the jury is still at a deadlock on

12   two interrogatories.  The jury as a whole feels no additional

13   deliberation will assist us in coming to a unanimous verdict,"

14   signed by the foreperson.

15       So I'm not going to read the Allen charge again.  I don't

16   think, based upon the letter from the jury, or the note, from

17   the jury yesterday and this note from the jury today, that I

18   need to make any inquiry as to how they feel they have

19   progressed or if they feel like they can progress farther.

20   There's some commentary out there that says when they report

21   they can't reach a decision you can inquire as to that.  But I

22   think giving the Allen charge and doing what we did yesterday

23   and receiving these two notes takes care of that.  I'm not

24   inclined to make any further inquiry.  But I'm happy to listen

25   to both sides as to what you all advise the next step should be,

1  and I'll tell you what I think.

2          MR. SWINDOLL:  Your Honor, I think we have to receive

3  whatever verdict it is.  We have to put them into the box and

4  ask what they have been able to reach, as we talked about

5  yesterday.  I don't think there's any other option as far as I

6  can see.

7          THE COURT:  Mr. Ellis?

8          MR. ELLIS:  They have reached 16 separate verdicts

9  apparently, and we need to I think receive those.  Mr. Swindoll

10 is right.  And then a mistrial should be declared with respect

11 to the deadlock.

12         THE COURT:  What I would say -- and I don't disagree

13 with that.  What I would say for logistics and so our court

14 security officer knows too what we're going to do, I'm going to

15 bring the jury out, and I'm going to put them in the box.  I'm

16 going to ask who the foreperson is that speaks for the jury.

17 I'm going to ask him to hand to our court security officer the

18 forms.  I'm going to receive the forms.  That's all in keeping

19 with what I would normally do.

20     Given what we know about their deliberations and the forms,

21 at that point I will review the forms.  And I will then declare

22 that we're going to send the jury back into the deliberation

23 room and have a recess.  I will then review the forms with you.

24 I'll permit you all to review them.  We'll see what answers we

25 have and sort of where we go from there.  I want to do that so

Elaine Hinson, RMR, CRR, CCR
United States Court Reporter

1    that you all have the ability to make whatever motions, whatever

2    requests, whatever objections based upon what we see before I

3    publish it, before I receive anything and before anyone polls

4    anybody on anything.

5        So when we receive it, I want you all to know that won't be

6    the end of it.  But I'm going to send them back into the

7    deliberation room.  I'm not going to excuse them yet.  And then

8    we'll go through what it is that we've received.

9        Is that acceptable to counsel for the plaintiff?

10                MR. SWINDOLL:  Yes, Your Honor.

11                THE COURT:  Is that acceptable to counsel for the

12    defense?

13                MR. ELLIS:  Absolutely.

14                THE COURT:  All right.  With that, why don't we put

15    our jury in the box.

16        (Jury present.)

17                THE COURT:  We are back on the record with counsel and

18    the parties and our jurors.

19        Who speaks for this jury as its foreperson?

20                JUROR NO. 5:  I do, Your Honor.

21                THE COURT:  If you would, please hand to our court

22    security officer the forms that you have.

23        Thank you.

24        Ladies and gentlemen, at this time we are going to take a

25    short recess.  I'm going to ask you to stay in the deliberation

1    room, and I will convene court again with you in a moment.  So

2    with that, if you would, please stand.

3         (Jury exits courtroom.)

4              THE COURT:  ████████████, the foreperson of the

5    jury, handed to our court security officer both the instructions

6    and the interrogatory forms.  For the purposes of everyone

7    knowing sort of where they stand, I'm going to go through this.

8         Interrogatory No. 1.  And I'm not publishing these.  I'm

9    announcing them so that we can have a discussion among counsel

10   and the Court and make any appropriate motions.  And the Court

11   will rule on any motions that are made.

12        Interrogatory No. 1.  You must answer this question.  Do

13   you find from a greater weight of the evidence that Mike

14   Richards showed deliberate indifference as to the serious

15   medical need of Casey Babovec, as explained in Instruction No.

16   8?  The answer is "no," signed by the foreperson and dated

17   January 31st, 2015.

18        Interrogatory No. 2.  You must answer this question.  Do

19   you find from a preponderance of the evidence that Mike

20   Richards' subordinates used excessive force against the person

21   of Casey Babovec and that Mike Richards made a culpable choice

22   between action or inaction in the supervision or control of

23   those subordinates, as explained in Instruction No. 9?  The

24   answer to that is "deadlocked," signed by the foreperson

25   1/31/15.

1     Interrogatory No. 3.  You must answer this question.  Do

2   you find from a greater weight of the evidence that Tonya Parker

3   showed deliberate indifference as to the serious medical need of

4   Casey Babovec, as explained in Instruction No. 8?  The answer is

5   "no."  And it's signed by the foreperson and dated 1/31/2015.

6     Interrogatory No. 4.  You must answer this question.  Do

7   you find from a greater weight of the evidence that Tonya Parker

8   used excessive force against the person of Casey Babovec, as

9   explained in Instruction No. 9?  The answer is "no," signed by

10   the foreperson and dated January 31st, 2015.

11     Interrogatory No. 5.  You must answer this question.  Do

12   you find from a greater weight of the evidence that Calvin Reed

13   showed deliberate indifference as to the serious medical need of

14   Casey Babovec, as explained in Instruction No. 8?  The answer is

15   "no," signed by the foreperson and dated January 31st, 2015.

16     Interrogatory No. 6.  You must answer this question.  Do

17   you find from a greater weight of the evidence that Calvin Reed

18   used excessive force against the person of Casey Babovec, as

19   explained in Instruction No. 9?  The answer here is

20   "deadlocked," signed by the foreperson, January 31, 2015.

21     Interrogatory No. 7.  You must answer this question.  Do

22   you find from a greater weight of the evidence that Sam Griffin

23   showed deliberate indifference as to the serious medical need of

24   Casey Babovec, as explained in Instruction No. 8?  The answer is

25   "no," signed by the foreperson, dated January 31st, 2015.

1      Instruction No. 8.  You must answer this question.  Do you

2   find from a greater weight of the evidence that Sam Griffin used

3   excessive force against the person of Casey Babovec, as

4   explained in Instruction No. 9?  The answer is "no."  It's

5   signed by the foreperson and dated January 31st, 2015.

6      Interrogatory No. 9.  You must answer this question.  Do

7   you find from a greater weight of the evidence that Dion McGuire

8   showed deliberate indifference as to the serious medical need of

9   Casey Babovec, as explained in Instruction No. 8?  The answer is

10  "no," signed by the foreperson and dated January 31st, 2015.

11     Interrogatory No. 10.  You must answer this question.  Do

12  you find from a greater weight of the evidence that Dion McGuire

13  used excessive force against the person of Casey Babovec, as

14  explained in Instruction No. 9?  The answer is "no."  It's

15  signed by the foreperson and dated January 31st, 2015.

16     Interrogatory No. 11.  You must answer this question.  Do

17  you find from a greater weight of the evidence that Ryan

18  McKinney showed deliberate indifference as to the serious

19  medical need of Casey Babovec, as explained in Instruction No.

20  8?  The answer is "no."  It's signed by the foreperson and dated

21  January 31st, 2015.

22     Interrogatory No. 12.  You must answer this question.  Do

23  you find from a greater weight of the evidence that Ryan

24  McKinney's subordinates used excessive force against the person

25  of Casey Babovec and that Ryan McKinney made a culpable choice

1    between action or inaction in the supervision or control of

2    those subordinates, as explained in Instruction No. 9?  The

3    answer is "no."  It's signed by the foreperson, and it's dated

4    January 31st of 2015.

5        Interrogatory No. 13.  You must answer this question.  Do

6    you find from a greater weight of the evidence that David Fenton

7    showed deliberate indifference as to the serious medical need of

8    Casey Babovec, as explained in Instruction No. 8?  The answer is

9    "no."  It's signed by the foreperson and dated January 31st of

10   2015.

11       Interrogatory No. 14.  You must answer this question.  Do

12   you find from a greater weight of the evidence that David Fenton

13   used excessive force against the person of Casey Babovec, as

14   explained in Instruction No. 9?  The answer is "no."  It's

15   signed by the jury foreperson and dated January 31st of 2015.

16       Interrogatory No. 15.  You must answer this question.  Do

17   you find from a greater weight of the evidence that James Payne

18   showed deliberate indifference as to the serious medical need of

19   Casey Babovec, as explained in Instruction No. 8?  The answer is

20   "no."  It's signed by the jury foreperson and dated

21   January 31st, 2015.

22       Interrogatory No. 16.  You must answer this question.  Do

23   you find from a greater weight of the evidence that James Payne

24   used excessive force against the person of Casey Babovec, as

25   explained in Instruction No. 9?  The answer is "no."  It's

1    signed by the jury foreperson and dated January 31st of 2015.

2        Interrogatory No. 17.  You must answer this question.  Do

3    you find from a greater weight of the evidence that Nancy

4    Shelnutt showed deliberate indifference as to the serious

5    medical need of Casey Babovec, as explained in Instruction No.

6    8?  The answer is "no."  It's signed by the jury foreperson, and

7    the date is today's date, January 31st, 2015.

8        Interrogatory No. 18.  You must answer this question.  Do

9    you find from a greater weight of the evidence that Nancy

10   Shelnutt used excessive force against the person of Casey

11   Babovec, as explained in Instruction No. 9?  The answer is "no."

12   It's signed by the jury foreperson, and it's dated January 31st

13   of 2015.

14       Interrogatory No. 19, which asks about the failure to train

15   by Bruce Pennington in his individual capacity resulting in the

16   lack of medical care for Casey Babovec is blank.

17       Interrogatory 20, which asks about the official policy,

18   practice or custom of Saline County and Bruce Pennington in his

19   official capacity resulting in the lack of medical care is left

20   blank.

21       Interrogatory No. 21, which asks about the failure to train

22   by Saline County and Bruce Pennington in his official capacity

23   resulting in a lack of medical care for Casey Babovec is left

24   blank.

25       And Interrogatory No. 22, which is the damages

1    interrogatory, is left blank.

2        What I propose that we do, I propose that we take about a

3    ten-minute recess to think through this.  What I will do first

4    is make copies of these if you wish to review them.  My count is

5    Interrogatories 2 and Interrogatory 6, which are both excessive

6    force interrogatories, one against Mike Richards as the

7    supervisor and one against Calvin Reed, are the ones on which

8    the jury deadlocked.  But I'll make copies of all of these for

9    you all to review.  We'll take a ten-minute recess.  And then

10   we'll come back out, and I'll entertain any motions or any

11   comments that you wish to make on the record.  We can talk about

12   how we're going to proceed.

13       With that, we'll stand in recess.

14       (Recess from 11:36 a.m. until 12:02 p.m.; jury not

15   present.)

16           THE COURT:  We are back on the record with counsel and

17   the parties outside the presence of the jury.  I'm happy to hear

18   from counsel, or I'm happy to go first, whatever you would like.

19   I can be persuaded.  And I have open questions on some issues as

20   to some of these.

21       Mr. Swindoll?

22           MR. SWINDOLL:  Your Honor, I would prefer that the

23   Court explain what it might be doing, because I'm kind of in new

24   territory here.  I'm not sure what the options are.

25           THE COURT:  Mr. Ellis?

1          MR. ELLIS:  We've got a verdict on all but two

2    defendants individually.  And I would ask those be published and

3    put into the form of a judgment.

4       I have a question.  And it's just -- it's a housekeeping

5    question, whatever the Court wants.  Does the Court, in a

6    mistrial situation where there is a deadlock, would it be --

7    would it be reasonable for the Court, not the lawyers, but for

8    the Court to inquire with respect to each of those two

9    deadlocked verdicts what the count was, not which direction, but

10   if it's 11 to one, six to six, eight -- I think counsel and I

11   would like -- I would like to know.  I think you might want to

12   know too.

13          MR. SWINDOLL:  I don't think I'm going to get to do

14   it.

15          THE COURT:  I don't think it's permissible for me to

16   do that.  I think that invades the province of the jury and the

17   jury deliberation process.  I'm not really comfortable doing

18   that today.  I'll sleep on it and think about it, maybe contact

19   folks.  But I'm not really comfortable doing that today.

20          MR. ELLIS:  I'm going to file a motion.  And Mr.

21   Swindoll also may file one for permission to talk to the jurors.

22   I know there's a local rule on that as to how we do that.

23   You'll contact them.

24          THE COURT:  Right, right.  Here is my view.  In regard

25   to the individual defendants to whom the jury has returned

1    deliberate indifference and excessive force claims, I'm inclined

2    to accept those verdicts, publish those verdicts.  And I'm happy

3    to poll the jurors on those verdicts if any side wishes for me

4    to do that.  That's in regard to folks for whom we have both.

5        Because there was no deliberate indifference finding by the

6    jury as to any individual defendant, after I accept those

7    verdicts, I don't believe there's a basis to go forward on a

8    constitutional claim because there's no underlying

9    constitutional claim.  I don't think that the county or Sheriff

10   Pennington in his official capacity or Sheriff Pennington in his

11   individual capacity can be held liable.  There's no underlying

12   constitutional violation on deliberate indifference, so there

13   can be no failure to train claim arising from that, nor can

14   there be a policy or practice claim that arises from that absent

15   an underlying constitutional violation.  So deliberate

16   indifference, that's if I accept deliberate indifference

17   findings as to Mike Richards and Calvin Reed, the question

18   becomes is it permissible to accept what in some terms is called

19   a partial verdict.  Is it acceptable in a civil case to accept a

20   partial verdict?  There's some Eighth Circuit case law that it's

21   not per se invalid to accept a partial verdict in a criminal

22   case.  It depends on the facts and circumstances of the case.

23       And I am specifically referring to *U.S. v. Benedict*, 95

24   F.3d 17.  Again, that's a criminal case.  So a lot of the

25   concerns and issues are very different.  95 F.3d 317, *United*

1    *States v. Benedict*.

2        In regard to Mr. Richards and Mr. Reed, I think it is an

3    open question as to whether I can accept a partial verdict on

4    the deliberate indifference claim and leave open the excessive

5    force claim.

6        What I'm inclined to do, I'm inclined today with the jury

7    to publish the deliberate indifference verdict, poll the jury on

8    deliberate indifference as to Mike Richards and deliberate

9    indifference as to Calvin Reed, so that I have done that on the

10    record and then essentially sort of take under advisement what I

11    understand likely would be a mistrial motion as to claims

12    against Calvin Reed and Mike Richards, whether those include

13    both an excessive force claim and/or an excessive force and

14    deliberate indifference claim.  Does that make sense?  Is

15    everybody tracking?

16        MR. SWINDOLL:  It sounds logical to me.  I believe

17    that's the only way we can do it.

18        MR. ELLIS:  I'm tracking, but I don't agree, Your

19    Honor.  You asked the jury two separate verdict forms with

20    regard to deliberate indifference -- let's take Mr. Richards --

21    deliberate indifference and excessive use of force.  They said,

22    yes, he did not use -- that he did not engage in deliberate

23    indifference, and we are undecided on use of force.

24        Now, if they were supposed to intertwine those concepts,

25    you would have polled them -- I mean, you would have sent an

1    interrogatory with both of those in one verdict form.  And you

2    didn't do that.  And I would have thought it would have been

3    improper to do that.  But they are two separate standing claims,

4    and one is not dependent on the other.  So I would ask that you

5    view the verdicts that way.

6          THE COURT:  And I'm not sure that I disagree with you,

7    Mr. Ellis.  What I propose is that I hold that decision.  I'll

8    receive this verdict.  I will poll the jury on that verdict on

9    deliberate indifference today.  But in terms of a motion for a

10   mistrial, I've told you the authority I've been able to find on

11   accepting a partial verdict.  I'm happy to hear from counsel on

12   that issue.  And I will reserve the determination of entering

13   judgment on the deliberate indifference verdict for Mr. Richards

14   and for Mr. Reed until after today.  I'll permit both sides to

15   address it if you wish to do it in briefing, and I'll make a

16   decision on that.

17         MR. ELLIS:  If it sounds like I'm quarreling with this

18   Court, it's because I am.  They are not partial verdicts.  Those

19   were two separate special verdicts.  We had two different

20   interrogatories answered.  If we had been in state court, they

21   wouldn't even have had to have been the same people signing the

22   bottom of it.  They are two separate concepts.

23         THE COURT:  And my point --

24         MR. ELLIS:  There's no partial verdict about it.

25   That's all I have to say.  I don't mean to be testy.

1    THE COURT:  And my point is simply you don't cite me

2    to any authority for that.  I have authority here about partial

3    verdicts in a criminal context that sounds much like what we're

4    presented with that's a reported Eighth Circuit case.  So what I

5    propose that I do is do what I've said, which is accept it

6    today, poll the jury while we have the jury here, and then table

7    a decision on this issue on entering judgment on that.  If you

8    have some authority, cite it.  If you don't, I understand we're

9    in unchartered territory.  But I want to study the case I cited

10   to you a little bit further before I make that determination.

11         MR. ELLIS:  And I'll do some reading myself.

12         THE COURT:  All right.  Does either side wish for me

13   to poll the jury?

14         MR. SWINDOLL:  No, Your Honor.

15         MR. ELLIS:  No, Your Honor.

16         THE COURT:  All right.  What I will do then is simply

17   put them in the box.  I will then read, publish the verdicts

18   that we have.  I will skip the two that are deadlocked.  I will

19   not read those.  And that is Interrogatory 2 and Interrogatory

20   6.

21      Is there any objection to that, Mr. Swindoll?

22         MR. SWINDOLL:  No, Your Honor.

23         THE COURT:  Mr. Ellis?

24         MR. ELLIS:  No, ma'am.

25         THE COURT:  Let's go ahead and bring them back in.

1          (Jury present.)

2          THE COURT:  Ladies and gentlemen, I am now going to

3     publish, which is read aloud, your verdicts.

4          Interrogatory No. 1.  You must answer this question.  Do

5     you find from a greater weight of the evidence that Mike

6     Richards showed deliberate indifference as to the serious

7     medical need of Casey Babovec, as explained in Instruction No.

8     8?  The answer is "no."  It's signed by the foreperson, and it

9     is dated.

10         Interrogatory No. 3.  You must answer this question.  Do

11    you find from a greater weight of the evidence that Tonya Parker

12    showed deliberate indifference as to the serious medical need of

13    Casey Babovec, as explained in Instruction No. 8?  The answer is

14    "no."  It's signed by the foreperson, and it is dated.

15         Interrogatory No. 4.  You must answer this question.  Do

16    you find from a greater weight of the evidence that Tonya Parker

17    used excessive force against the person of Casey Babovec, as

18    explained in Instruction No. 9?  The answer is "no."  It is

19    signed by the foreperson, and it includes today's date.

20         Interrogatory 5.  You must answer this question.  Do you

21    find from a greater weight of the evidence that Calvin Reed

22    showed deliberate indifference as to the serious medical need of

23    Casey Babovec, as explained in Instruction No. 8?  The answer is

24    "no."  It's signed by the foreperson, and it is dated.

25         Interrogatory No. 7.  You must answer this question.  Do

1    you find from a greater weight of the evidence that Sam Griffin

2    showed deliberate indifference as to the serious medical need of

3    Casey Babovec, as explained in Instruction No. 8?  The answer is

4    "no."  It's signed by the foreperson and dated.

5         Interrogatory No. 8.  You must answer this question.  Do

6    you find from a greater weight of the evidence that Sam Griffin

7    used excessive force against the person of Casey Babovec, as

8    explained in Instruction No. 9?  The answer is "no."  It's

9    signed by the foreperson, and it is dated.

10        Interrogatory No. 9.  You must answer this question.  Do

11   you find from a greater weight of the evidence that Dion McGuire

12   showed deliberate indifference as to the serious medical need of

13   Casey Babovec, as explained in Instruction No. 8?  The answer is

14   "no."  It's signed by the foreperson, and it is dated.

15        Interrogatory No. 10.  You must answer this question.  Do

16   you find from a greater weight of the evidence that Dion McGuire

17   used excessive force against the person of Casey Babovec, as

18   explained in Instruction No. 9?  The answer is "no."  It is

19   signed by the foreperson, and it is dated.

20        Interrogatory No. 11.  You must answer this question.  Do

21   you find from a greater weight of the evidence that Ryan

22   McKinney showed deliberate indifference as to the serious

23   medical need of Casey Babovec, as explained in Instruction No.

24   8?  The answer is "no."  It's signed by the foreperson, and it

25   includes today's date.

1    Interrogatory No. 12.  You must answer this question.  Do

2    you find from a greater weight of the evidence that Ryan

3    McKinney's subordinates used excessive force against the person

4    of Casey Babovec and that Ryan McKinney made a culpable choice

5    between action or inaction in the supervision or control of

6    those subordinates, as explained in Instruction No. 9?  The

7    answer is "no."  It's signed by the foreperson, and it includes

8    today's date.

9    Interrogatory No. 13.  You must answer this question.  Do

10   you find from a greater weight of the evidence that David Fenton

11   showed deliberate indifference as to the serious medical need of

12   Casey Babovec, as explained in Instruction No. 8?  The answer is

13   "no."  It is signed by the foreperson, and it is dated.

14   Interrogatory No. 14.  You must answer this question.  Do

15   you find from a greater weight of the evidence that David Fenton

16   used excessive force against the person of Casey Babovec, as

17   explained in Instruction No. 9?  The answer is "no."  It is

18   signed by the foreperson, and it is dated.

19   Interrogatory No. 15.  You must answer this question.  Do

20   you find from a greater weight of the evidence that James Payne

21   showed deliberate indifference as to the serious medical need of

22   Casey Babovec, as explained in Instruction No. 8?  The answer is

23   "no."  It's signed by the foreperson, and it includes today's

24   date.

25   Interrogatory No. 16.  You must answer this question.  Do

1    you find from a greater weight of the evidence that James Payne

2    used excessive force against the person of Casey Babovec, as

3    explained in Instruction No. 9?  The answer is "no."  It's

4    signed by the foreperson, and it includes today's date.

5         Interrogatory No. 17.  You must answer this question.  Do

6    you find from a greater weight of the evidence that Nancy

7    Shelnutt showed deliberate indifference as to the serious

8    medical need of Casey Babovec, as explained in Instruction No.

9    8?  The answer is "no."  It's signed by the foreperson, and it

10   is dated.

11        Interrogatory No. 18.  You must answer this question.  Do

12   you find from a greater weight of the evidence that Nancy

13   Shelnutt used excessive force against the person of Casey

14   Babovec, as explained in Instruction No. 9?  The answer is "no."

15   And it is signed by the foreperson and dated.

16        With that, is there any further business on behalf of

17   counsel for the plaintiff?

18             MR. SWINDOLL:  No, Your Honor.

19             THE COURT:  On behalf of counsel for the defense?

20             MR. ELLIS:  No, ma'am.

21             THE COURT:  Ladies and gentlemen of the jury, you have

22   been very attentive.  We very much appreciate it.  This process

23   does not work unless folks like you are willing to serve.  You

24   have all done that admirably and well, and we appreciate that.

25   Thank you for paying attention and for putting in the hours and

1    for sticking with us.

2        With that, I'm going to discharge your jury service.  We

3    appreciate it.  Have a good afternoon and a good weekend.

4        (Jury excused.)

5        THE COURT:  With that, what the Court will do, I may

6    set a timetable for any further briefing so that I can receive

7    any further briefing.  And then I'll enter a judgment after that

8    date so that it's clear and clean and everybody understands

9    where we're at in the process.

10       I don't know that there's anything else we need to take

11   care of today.  I understand you all may wish to speak to

12   jurors.  I think all you need to do is either send a letter to

13   the Court or a one-liner.  I'm not sure what that local rule

14   requires.  I do know what happens then is that the jury

15   administrator reaches out to folks.  And if they do not wish to

16   be contacted, they let the jury administrator know.

17       Mr. Ellis?

18       MR. ELLIS:  Just so the record is clear, Your Honor --

19   and I think it is.  There are two hung jury issues with respect

20   to Verdict Form 2, Officer Richards, and Verdict Form 6, Officer

21   Reed.  And we would move for a mistrial with respect to both of

22   those verdicts.

23       THE COURT:  And I understand your mistrial to be

24   solely as to the excessive force claim for Officer Richards and

25   Officer Reed.

1          MR. ELLIS:  Yes.  That is Verdict Forms 2 and 6.

2          THE COURT:  All right.  And I will take that motion

3    under advisement, not because I don't believe that should be

4    granted, but in my mind the question is, on the deliberate

5    indifference claim, as to those two individuals and how that all

6    factors in.  I take the motion under advisement with that

7    caveat.  So that there's no mistake about it, I don't believe

8    the jury reached a verdict at all on excessive force.  My

9    question is whether on the deliberate indifference claim sort of

10   what happens with that as to those two individual defendants.

11         And I don't know that I disagree with you, Mr. Ellis.  But

12   I just want to make sure with the authority that's out there

13   that if there's any base that needs to be covered it's covered

14   and analyzed in the case.  I don't think these two claims are

15   interdependent.  I don't think they relate to each other, and I

16   don't think there are any elements that overlap.  And I think

17   that's sometimes the issue in criminal cases, as best I

18   understand it from a very quick study on the break.  But I want

19   to make sure that that's the situation.

20         Is there anything else we can take care of or we need to

21   attend to today, Mr. Swindoll?

22         MR. SWINDOLL:  No, Your Honor.

23         THE COURT:  Mr. Ellis?

24         MR. ELLIS:  No, Your Honor.

25         THE COURT:  With that, I hope that everyone is able to

1  enjoy and rest for the rest of the weekend.  We're adjourned.

2       (Proceedings concluded at 12:21 p.m.)

3                    REPORTER'S CERTIFICATE

4     I certify that the foregoing is a correct transcript from
  the record of proceedings in the above-entitled matter.

5

6  /s/Elaine Hinson, RMR, CRR, CCR     Date:  November 17, 2015.
  United States Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25